[No. A027895. First Dist., Div. One. May 23, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH LONNIE HAMMOND, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Melissa K. Nappan, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RACANELLI, P. J.**—Defendant was convicted of the crimes of murder, attempted murder and robbery on a theory of aiding and abetting as the driver of the getaway car.[1] (Two unrelated robbery charges were ordered severed to be tried separately.) Defendant was sentenced to a term of 32 years to life. On appeal defendant raises several claims of error discussed hereafter.

### Facts

The record discloses the following salient facts:

About 1 in the afternoon on April 5, 1983, Stephan Mitcham entered Ormond's Jewelry Store on Lakeshore Avenue in Oakland. He wore a hooded burgundy-colored ski parka and sunglasses and carried a brown paper grocery sack containing a pillow. In response to Mitcham's request to see a better selection of wedding sets, James Ormond, the 79-year-old store owner, walked to the rear of the shop near the safe where more rings were kept. Mitcham followed.

Yvette Williams, a store employee, became fearful of an impending robbery by reason of Mitcham's dress and his approach to the safe. As she started to leave, Mitcham walked over to her desk and asked: "How are you doing today, Miss?" Then, without any warning, he produced a gun and shot her in the face.

Williams fell, bleeding, and pretended to be dead. After hearing her employer's voiced incredulity as to the assailant's purpose in shooting her, she then heard some scuffling noises followed by two shots. She next heard sounds of someone rummaging through the drawers of the safe. Finally, she saw her assailant's feet as he walked past toward the door of the jewelry store.

---

[1]His codefendant, Stephan Mitcham, was convicted of murder with special circumstances (murder in the commission of a robbery). Mitcham was sentenced to death; his automatic appeal is pending before the Supreme Court.

As Mitcham exited, a number of pedestrians—alerted by a passerby who had observed the struggle—clustered in front of the store. Mitcham warned them, "If you follow me, I'll shoot you" or "If you touch me, I'll kill you." The witnesses watched as he crossed Lakeshore and headed toward Trestle Glen.

At about the same time as the robbery was in progress, defendant Keith Hammond entered a Baskin-Robbins ice cream shop on Trestle Glen and paced back and forth by the front window from which the jewelry store could be seen. Defendant did not order any service but asked the proprietress for a rubber band. About a minute or so after defendant left the shop, the proprietress heard the screeching of tires in a "fast take off."

At this point a Ford Falcon (later described as a gold Ford Falcon with white stripes on top, wire spoke wheels and front grill emblems) was observed making a wide turn from the Baskin-Robbins store onto Trestle Glen. Three witnesses saw a black man wearing a maroon jacket, carrying a brown paper bag, walk swiftly up Trestle Glen from Lakeshore where he jumped or "dove in" the back seat of the car and ducked down. One witness heard defendant, the driver of the car, say "[g]et down, get down" and the passenger's rejoinder to "[g]et, get." The car then sped away up Trestle Glen.

Defendant's car is a gold and white Ford Falcon (defendant was a member of a car club called the "Falcon Gang") and was identified by several witnesses as the one seen leaving the robbery.

The police arrived within minutes and inspected the ransacked drawers in the safe. Williams was taken to the hospital where bullet fragments were removed from the left side of her cheek. Ormond died of multiple gunshot wounds inflicted at close range. Both Williams and the deceased had been shot with .22 caliber bullets. A criminalist testified he test-fired a .22 caliber gun with a pillow over the gun which muffled the firing sounds of the weapon.

Later that afternoon, Mitcham approached an acquaintance, Richard Leonard, and offered to sell him a wedding ring set from a display of about 20 tagged sets of engagement and wedding rings; Leonard selected a set and paid Mitcham about $250 for a ring bearing a price tag of $950.

Mitcham confided to Leonard that he got the rings from a jewelry store near the lake, and that he shot a man and a woman before ransacking the place. Mitcham told Leonard that defendant waited for him in the car.

During this conversation defendant stood several feet away from Mitcham. Defendant Hammond did not participate in the sale of the rings.

In his postarrest statement, defendant admitted driving a 1968 gold and white Ford Futura from Alameda College to the Lakeshore District where he entered Baskin-Robbins and asked for a rubber band to tie back his hair. Defendant admitted possession for a few hours of three sets of tagged rings that might have been taken in the Ormond robbery but added that he ultimately threw them away.

Both defendants rested without presenting any testimony.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Attempted Murder*

■ Defendant further contends that his conviction for the attempted murder of Yvette Williams must be reversed because of the absence of proof of defendant's intent to kill. Defendant's argument is twofold: First, he contends that the evidence was insufficient to support the conviction; the prosecutor conceded (both in closing argument and in striking the special circumstance) that there was no evidence of defendant's intent to kill. Secondly, he continues, the instructions were erroneous in that they failed to inform the jury of the need to find that he possessed the specific intent to kill.

Defendant relies on settled principles that the issue of attempted murder requires a specific intent to kill (*People* v. *Croy* (1985) 41 Cal.3d 1, 20-21 [221 Cal.Rptr. 592, 710 P.2d 392]; *People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908]; *People* v. *Santascoy* (1984) 153 Cal.App.3d 909, 913, 918 [200 Cal.Rptr. 709]), and that an aider and abettor must share the perpetrator's intent (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]; *People* v. *Acero* (1984) 161 Cal.App.3d 217, 224-226 [208 Cal.Rptr. 565]). *Beeman* teaches, however, that to "share" the perpetrator's intent does not mean the aider and abettor is prepared to commit the offense by his own act. All that is needed

---

*See footnote, *ante,* page 463.

is a knowing intent to assist the perpetrator's commission of the crime. Once that intent is formed, the liability of an aider and abettor "extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560.)

In *People* v. *Croy, supra,* 41 Cal.3d 1, the court explicated its *Beeman* discussion of vicarious liability in the following manner: "The requirement that the jury determine the intent with which a person tried as an aider and abettor has acted is not designed to ensure that his conduct constitutes the offense with which he is charged. His liability is vicarious. Like the conspirator whose liability is predicated on acts other than and short of those constituting the elements of the charged offense, if the acts are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, he is a principal and liable for the commission of the offense. Also like a conspirator, he is guilty not only of the offense he intended to facilitate or encourage, *but also of any reasonably foreseeable offense committed by the person he aids and abets.* [Citation.] . . . .

"It follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him *for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which Beeman holds must be found by the jury.* [Citation.]" (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5, italics ours; see also *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 514-515 [217 Cal.Rptr. 809].)

Accordingly, defendant's arguments must be rejected. His act of driving the getaway car was ample evidence of his intent to assist or facilitate Mitcham in perpetrating the robbery. As an aider and abettor, defendant was liable not only for the robbery which he intended to assist but also for any natural and probable consequences thereof. Thus, it was not essential that he harbored the specific intent to kill or that he intended to facilitate the offense of attempted murder committed as a foreseeable consequence by Mitcham. Although we agree the instructions on attempted murder were flawed,[5] no prejudice ensued thereby to defendant who was tried and con-

---

[5]We note that the instructions on attempted murder incorrectly conveyed the notion that the murder theories were equally applicable to attempted murder: they erroneously suggested

victed on the theory of aiding and abetting. Under such theory of vicarious liability, the jury was not required to find that he possessed the specific intent to kill.

█ Nevertheless, we believe the pattern instruction given,[6] standing alone, is potentially ambiguous in its failure to adequately inform the jury of its fact-finding function in determining the question of vicarious liability for the unplanned related offense. Thus, while the jury need only find that defendant knowingly and intentionally facilitated or encouraged the planned offense (robbery), whether the crime charged (attempted murder) was in fact a natural and probable consequence of the planned offense was for the jury to decide. (*People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Rogers, supra,* 172 Cal.App.3d 502, 516; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Beltran* (1949) 94 Cal.App.2d 197, 205-206 [210 P.2d 238]; *People* v. *King* (1938) 30 Cal.App.2d 185, 202 [85 P.2d 928].)

Arguably, the language of the instruction suggests that the jury should assume—rather than find—that the attempted murder was a natural and probable consequence of the robbery. We think that when, as here, a defendant is charged not only with the perpetrator's planned offense but with another offense ultimately committed as a natural and probable consequence thereof, CALJIC No. 3.00 (4th ed. 1979 [including the 1984 revision]) should be supplemented with an instruction clarifying the jury's related responsibility to determine whether the act committed was in fact a natural and probable consequence of the criminal act knowingly and intentionally encouraged.

We conclude, however, any error due to the absence of such a clarification was harmless. There was no reasonable likelihood that the jury would have found that the attempted murder was either unforeseeable or adventitious: Mitcham entered the jewelry store to execute the planned armed robbery using a concealed pillow to muffle the sound of possible gunfire. Having determined that defendant knew of Mitcham's plan and intended to facilitate the armed robbery, the jury would in all likelihood have also found that the

---

that the doctrine of implied malice or the felony-murder rule could serve as a basis for a conviction of attempted murder. (*People* v. *Ramos, supra,* 30 Cal.3d at p. 583; see also *People* v. *Collie* (1981) 30 Cal.3d 43, 61-62 [171 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People* v. *Croy, supra,* 41 Cal.3d at pp. 20-21.)

[6]The instruction in pertinent part reads as follows: "In other words, one who aids or abets or assists in a crime is equally guilty as the person committing the crime. One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but *he is also liable for the natural and reasonable consequences of any act that he knowingly aided or encouraged.*" (Italics added.)

attempted murder of Yvonne Williams, a store clerk, was a natural and probable consequence of the robbery itself.

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied June 18, 1986, and appellant's petition for review by the Supreme Court was denied August 28, 1986. Bird, C. J., was of the opinion that the petition should be granted.