[No. D006862. Fourth Dist., Div. One. Apr. 10, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY ANTHONY PATTERSON, Defendant and Appellant.

**COUNSEL**

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

NARES, J.—Troy Anthony Patterson appeals his conviction by jury of attempted murder (Pen. Code,[1] §§ 664/187), robbery (§ 211), attempted robbery (§§ 664/211), and possession of a sawed-off shotgun (§ 12020, subd. (a)) with enhancements for firearm use (§§ 12022, subd. (a), 12022.5). He contends the court erred in 1) failing to instruct the jury that attempted murder requires proof of express malice and a specific intent to kill; 2) failing to instruct the jury on the definition of aiding and abetting; 3) imposing consecutive sentences for attempted murder and robbery, in violation of section 654; 4) imposing consecutive sentences for two weapons use enhancements; and 5) failing to stay imposition of sentence on one of two counts of possessing a sawed-off shotgun. We conclude the failure to instruct the jury on specific intent as well as on the definition of aiding and abetting requires reversal of Patterson's conviction for attempted murder.

### FACTUAL AND PROCEDURAL BACKGROUND

At about 10 p.m. on April 3, 1986, three armed men forced their way into a home where six adults and five children were present. The first man to enter, later identified as Patterson, approached the owner of the home, Gail Hamlin, with a sawed-off shotgun and attempted to handcuff her. Hamlin resisted, fell to the floor and began screaming for her husband, Morris Hall, to help her. Hall came out of the bedroom and saw Patterson struggling with Hamlin. Hall grabbed Patterson, and as he drew back his fist, a shot was fired, hitting Hall in the face. The shot was not fired by Patterson.[2]

The intruders demanded cash and Hall complied by throwing money into the room. Hall fell to the floor and the man who shot him put a gun to his head, threatening to blow his brains out if he did not give him the rest of the money. When Hamlin told the men there was no more money, they left.

At about 6 a.m. on April 4, 1986, a police officer saw Patterson standing in the street blocking the forward movement of a car. As the officer approached Patterson, he pulled his coat shut. Believing Patterson was armed, the officer conducted a patdown search, seized a sawed-off shotgun concealed under Patterson's coat and arrested him. Forensic examination of the shotgun revealed a small quantity of dried blood on the tip of the barrel.

Patterson was charged as follows: count I, attempted murder (§§ 664/187); count II, robbery (§ 211); counts III, IV and V, attempted

---

[1] All statutory references are to the Penal Code unless otherwise specified.
[2] Hall was seriously injured, requiring surgery and two weeks of hospitalization.

robbery (§§ 664/211); count VI, possession of a concealable firearm by a person previously convicted of a crime (§ 12025, subd. (b)); count VII, possession of a sawed-off shotgun (§ 12020, subd. (a)); and count VIII, unlawful possession of a concealable firearm by an ex-felon (§ 12021, subd. (a)), the felony being for petty theft with a prior theft (§§ 666/484). As to counts I, II, III, IV and V, it was alleged Patterson personally used a firearm (§ 12022.5). As to counts I, II and III, it was alleged Patterson personally inflicted great bodily injury on a victim (§ 12022.7).[3] The robberies charged in counts II and III were alleged to have been perpetrated in an inhabited dwelling (§ 213.5). An amended information additionally alleged Patterson was armed with (§ 12022, subd. (a)) and personally used (§ 12022.5) a sawed-off shotgun as to counts I through V. Patterson pleaded not guilty and denied the allegations.

Counts IV and V were later dismissed due to the unavailability of witnesses. Before trial, Patterson pleaded guilty to counts VI and VIII.

After trial, the jury convicted Patterson of all remaining counts and enhancements except the enhancements for personal infliction of great bodily injury in counts I and II. The court sentenced Patterson to prison for a total unstayed term of 13 years, 8 months.

## DISCUSSION

### I

### A

Patterson contends the court erred in failing to tell the jury the crime of attempted murder requires proof of express malice and a specific intent to kill. We agree.

The trial court instructed the jury the crime of attempted murder requires proof of a specific intent to commit murder. The court further instructed that murder is a killing that takes place during the commission or attempted commission of an inherently dangerous felony such as robbery. (CALJIC[4] Nos. 8.10 (1983), and 8.21 (1979).) The court did not tell the jury that murder requires a finding of express malice and specific intent to kill, but instead relied on an instruction allowing the jury to apply theories of murder that do *not* require express malice and specific intent to kill. This

---

[3] Upon the People's motion, the court later struck the great bodily injury allegation in connection with count III.

[4] All CALJIC jury instructions referred to are from the Fourth edition.

was error because "the crime of attempted murder requires a specific intent to kill, a mental state coincident with express malice but not necessarily with implied malice or felony murder." (*People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908].) Thus, the instruction given here erroneously "implied that the jury should find [Patterson] guilty of attempted murder if it determined that [Patterson] intentionally committed an act which, were the victim to die, would constitute murder on an implied malice or felony-murder theory." (*Ibid.,* citing *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446]; see also *People* v. *Croy* (1985) 41 Cal.3d 1, 20-21 [221 Cal.Rptr. 592, 710 P.2d 392].)

The purpose of the felony-murder rule is to deter persons from killing negligently or accidentally by holding them strictly responsible for all killings they commit during the perpetration or attempted perpetration of certain felonies. (§ 189; *People* v. *Johnson* (1972) 28 Cal.App.3d 653, 658 [104 Cal.Rptr. 807].) For the felony-murder rule to apply, section 189 requires a "killing." (*People* v. *Gunnerson* (1977) 74 Cal.App.3d 370, 378 [141 Cal.Rptr. 488].) Thus, the felony-murder rule is inapplicable to attempted murder as well as aiding and abetting an attempted murder. (*People* v. *Hammond* (1986) 181 Cal.App.3d 463, 468-469, fn. 5 [226 Cal.Rptr. 475].) Because there was no killing here, the instruction allowing the jury to convict Patterson of attempted murder on a felony-murder theory was error.

## B

Contrary to the People's assertion, this result is not changed by the fact Patterson was tried and convicted as an aider and abettor. A defendant's culpability for attempted murder as an aider and abettor necessarily depends on the commission of that crime by the perpetrator. In order to convict the perpetrator of attempted murder, the jury must find he had the requisite express malice and specific intent to kill. If no such finding is made, that person is not guilty of attempted murder. If the perpetrator cannot be convicted of attempted murder without a finding of express malice and specific intent to kill, then no lesser standard should apply to an aider and abettor simply because his liability extends to "the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].)

We recognize that as an aider and abettor, a defendant "need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or

facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury. [Citation.]" (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) Nevertheless, the perpetrator must have the requisite specific intent to kill and the jury must be so instructed. The error here was the court's failure to properly instruct the jury on intent as to the perpetrator's crime and its reliance instead on a felony-murder or implied-malice theory in the context of attempted murder.

## C

■ The appropriate standard of review for this error is the *Chapman* "harmless beyond a reasonable doubt" test. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1].) Applying the *Chapman* test, we cannot say the error here was harmless beyond a reasonable doubt. The evidence showed Patterson participated in the armed robbery of Hamlin and the attempted armed robbery of Hall. The evidence further showed a shot was fired from the kitchen by someone other than Patterson, hitting Hall in the face. Although we can infer from this evidence the perpetrator of the shooting had the *intent to shoot* Hall, "there was no further evidence of a specific *intent to kill* necessary to sustain an attempted murder conviction." (*People* v. *Ratliff* (1986) 41 Cal.3d 675, 695 [224 Cal.Rptr. 705, 715 P.2d 665], italics original.) Moreover, the jury was never instructed the perpetrator of the shooting was required to have express malice and the specific intent to kill. Accordingly, Patterson's conviction for attempted murder must be reversed.

## D

We are mindful that a different result was reached in *People* v. *Hammond, supra,* 181 Cal.App.3d 463. In that case, defendant Hammond was convicted of murder, attempted murder and robbery on a theory of aiding and abetting. Hammond was tried with his codefendant, Mitcham. The evidence showed Mitcham, in robbing a jewelry store, shot a store employee and shot and killed the owner. Hammond drove the getaway car. On appeal, Hammond argued the court erred in failing to instruct the jury of the need to find he had the specific intent to kill as to the attempted murder charge.

The court held, as have we, the instructions on attempted murder erroneously suggested the doctrine of implied malice or the felony-murder rule

could serve as a basis for a conviction of attempted murder. (*People* v. *Hammond, supra,* 181 Cal.App.3d at p. 468, fn. 5.) However, the court further held Hammond was not prejudiced by this instruction because he was tried and convicted on a theory of aiding and abetting, and "[u]nder such theory of vicarious liability, the jury was not required to find that he possessed the specific intent to kill." (*Id.* at pp. 468-469.)

To the extent *Hammond* can be interpreted as holding an aider and abettor can be convicted of attempted murder in the absence of a jury instruction on the perpetrator's specific intent to kill, we disagree. As we previously stated, the jury must find the perpetrator had the requisite express malice and specific intent to kill before it can also find the aider and abettor guilty. We also note a critical factual distinction between *Hammond* and our case. In *Hammond,* the aider and abettor and the perpetrator were tried together. There was ample evidence of the perpetrator's specific intent to kill and the jury may have been so instructed. Here, no evidence was presented that the person who shot Hall intended to kill him, nor was the jury told they were required to find the perpetrator had such specific intent in order to convict Patterson of aiding and abetting an attempted murder.

## II

The prejudicial effect of the instructional error as to the attempted murder charge was compounded by the court's failure to instruct the jury on the definition of aiding and abetting. In accordance with CALJIC No. 3.00 (1987), the court told the jury: "The persons concerned in the commission or attempted commission of a crime, who are regarded by the law as principals in the crime thus committed or attempted, and equally guilty thereof, include those who directly and actively commit or attempt to commit the act constituting the crime, or those who aid or abet the commission.

"One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, he is also liable for the natural or reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged." However, the court failed to also give CALJIC No. 3.01 (1984) which provides in part: "A person aids and abets the commission or attempted commission of a crime when he or she, (1) with knowledge of the unlawful purpose of the perpetrator and (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime."

In *People* v. *Beeman, supra,* 35 Cal.3d 547, 560, the Supreme Court held in order to convict a defendant on a theory of aiding and abetting,

there must be proof the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of the offense. [Citations]." Here, in failing to give CALJIC No. 3.01 (1984), the issue of intent was removed from the jury's consideration. The fact the court gave CALJIC No. 3.00 (1987), defining principals, did not relieve it of its duty to also give CALJIC No. 3.01 (1984) defining aiding and abetting. (*People* v. *Ponce* (1950) 96 Cal.App.2d 327, 331 [215 P.2d 75].) On retrial, both CALJIC Nos. 3.00 (1987) and 3.01 (1984) should be given.[5]

### III

In light of our conclusion Patterson's conviction for attempted murder must be reversed, we need not address Patterson's further contentions of sentencing error.

### DISPOSITION

The judgment as to count I (attempted murder) is reversed. The judgment as to counts II (robbery), III (attempted robbery) and VII (possession of a sawed-off shotgun) is affirmed.

Wiener, Acting P. J., and Todd, J., concurred.

---

[5] According to the use notes of CALJIC Nos. 3.00 and 3.01, those instructions were revised in 1984 to incorporate the principles set forth in *People* v. *Beeman, supra,* 35 Cal.3d 547. The notes also state both CALJIC Nos. 3.00 and 3.01 should be given sua sponte in every case in which a defendant is prosecuted as an aider and abettor.