Filed 5/7/21  P. v. Coley CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DALE JOSEPH EVERET COLEY,<br><br>    Defendant and Appellant. | A159927<br><br>(Solano County<br>Super. Ct. No. VCR208165) |

Appellant Dale Joseph Everet Coley was convicted of second degree murder and attempted murder without premeditation based on his actions as the driver in a drive-by shooting.  (Pen. Code, § 187, 664/187.)[1] The jury also found that he committed the crimes for the benefit of a criminal street gang and was a principal in a gang-related crime where a principal personally and intentionally discharged a firearm causing great bodily injury or death.  (§§ 186.22, subd. (b)(1); 12022.53, subds. (d), (e)(1).)  Several years after his convictions were affirmed on appeal, he filed a petition for relief under section 1170.95, enacted

---

[1] Further references are to the Penal Code unless otherwise indicated.

1

as part of Senate Bill 1437, averring that he did not, with intent to kill, aid, abet or assist the actual killer in the commission of murder, and that he could not be convicted of murder or attempted murder under the newly reformed murder statutes (amended sections 188 or 189).  After appointing counsel for appellant and reviewing briefs submitted by his counsel and the district attorney, the trial court denied the petition.  We affirm.

## I.  SENATE BILL 1437

Because it is essential to the issues raised in this appeal, we summarize recent changes to the law of murder and malice aforethought under Senate Bill 1437.

Malice aforethought is generally an essential element of the crime of murder.  (§ 187.)  Malice is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature" (§ 188, subd. (a)(1)) and is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§188, subd. (a)(2)).  Phrased another way, implied malice exists when the defendant commits " 'an act, the natural consequences of which are dangerous to life' " and " 'knows that his [or her] conduct endangers the life of another and . . . acts with a conscious disregard for life.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

"Before Senate Bill 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement.  The felony-murder rule made 'a killing while committing certain felonies murder without the

necessity of further examining the defendant's mental state.' [Citation.] First degree felony murder was 'a killing during the course of a felony specified in . . . section 189, such as rape, burglary, or robbery.' [Citation.] Second degree felony murder was ' "an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189." ' [Citation.] The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.' [Citation.] Because a nontarget murder ' "is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the [murder]." ' " (*People v. Johns* (2020) 50 Cal.App.5th 46, 57–59 (*Johns*).) Thus, under the doctrines of felony murder and the natural and probable consequences theory, a defendant could be convicted of murder without the need of proving malice.

Effective January 1, 2019, Senate Bill 1437 changed the law of murder in significant ways. Section 188, which defines express and implied malice, was amended to provide, "Except as stated in subdivision (e) of Section 189 in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her

3

participation in a crime." (§ 188, subd. (a)(3).) Subdivision (e) was added to section 189, which defines the scope of first degree felony murder, and provides, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;] [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2." (§ 189, subd. (e).)

The effect of these changes are still being dissected by the courts of this state, but are generally agreed to (1) abolish the natural and probable consequences doctrine with respect to murder, so that an aider and abettor cannot be convicted of murder under that theory (*People v. Gentile* (2020) 10 Cal.5th 830, 847 (*Gentile*) [aider and abettor cannot be convicted of second degree murder based on natural and probable consequences doctrine]); and (2) limit the first degree felony-murder rule so that it is limited to the actual killer, to an aider and abettor who acts with an intent to kill, or to an aider and abettor who is a major participant in the underlying felony and acts with a reckless indifference to life. (*Johns, supra*, 50 Cal.App.5th at p. 59.) The amendments to section 188 also call into question the continuing validity of the second degree felony

4

murder rule. (*In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2.) However, a defendant may still be liable for murder as a "direct" aider and abettor because a direct aider and abettor must possess malice aforethought. (*Gentile, supra,* 10 Cal.5th at p. 848; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*) [outside of natural and probable consequences doctrine, aider and abettor must share murderous intent of perpetrator]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1164.)

Senate Bill 1437 also added section 1170.95, which creates a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to obtain the benefits of these changes retrospectively. Such offenders may petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Gentile, supra,* 10 Cal.5th at pp. 858–859.)

Section 1170.95, subdivision (a) provides that the petition must allege: (1) a complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) the petitioner was convicted of first or second degree murder following a trial or guilty plea, and (3) the petitioner could not be convicted of first or second degree murder because of changes in sections 188 and 189 made effective January 1, 2019. The petition must also include, in pertinent part, a declaration stating the petitioner "is eligible for

relief under this section" based on all the requirements in subdivision (a) of section 1170.95, and whether the petitioner requests the appointment of counsel. (*Id.*, subd. (b)(1)(A) & (C).) If any of the required information is missing and cannot be readily ascertained by the court, "the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)[2]

Section 1170.95, subdivision (c) provides the process by which the court is to decide the petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." Therefore, no order to show cause is issued and no hearing is held (§ 1170.95, subd. (d)(1)) unless the court first determines a prima facie showing of entitlement to relief.

---

[2] Appellant first filed a habeas corpus petition in superior court to assert his entitlement to resentencing, which was summarily denied on the ground there existed a "plain, speedy and adequate remedy" under section 1170.95.

## II. BACKGROUND

We turn now to the particulars of this case.

A. *Statement of Facts[3]*

Emmanuel Hernandez and Yusef Hussein were walking along the highway on the evening of January 28, 2009 when shots rang out from a car and Hernandez suffered a fatal wound in the back of his neck. Appellant was the driver of the car from which the shots were fired, and Shane Peters was the shooter. Two passengers in the car—Richard Eads and Francisco Soto— agreed to give state's evidence in return for a charge of accessory after the fact.

Appellant and Peters were both members of the Norteno street gang, and Hussein was associated with the rival Sureno gang. On the day of the shooting, appellant, Peters, Eads and Soto were driving around in appellant's car, stopping for the purpose of painting "anti-Sureno graffiti." They saw Hussein, whom they recognized as a rival gang member, and appellant expressed astonishment he was "walking around on my streets." Appellant drove Peters to his car, where he retrieved something, and returned to Hussein's location.

Peters got out of the car and walked toward Hussein with a gun in his hand, but then returned to the car.

---

[3] The facts are taken from our prior unpublished opinion in this matter, of which we take judicial notice. (*People v. Peters* (January 4, 2013, A131097) [nonpub. opn.]; Evid. Code, §§ 452, 459.)

7

Appellant made a U-turn, ran a red light, and crossed the road in order to get close to Hussein. Peters leaned out of the window and fired several shots.

B. *Charges, Instructions and Verdict*

Appellant and Peters were jointly charged with first degree murder with special circumstances and with attempted murder, along with various firearm and gang enhancements. The jury was instructed on first degree murder based on theories of premeditation and deliberation and shooting a firearm from a motor vehicle, and on second degree murder based on either express or implied malice. They were also instructed on the doctrine of transferred intent, but were not instructed on felony murder (either of first or of second degree) or the natural and probable consequences doctrine, or on any target offense other than murder. The jury returned a verdict of second degree murder and attempted murder as to both defendants.

C. *Petition under section 1170.95*

On March 18, 2019, filed a petition for resentencing under section 1170.95, requesting that he be resentenced on both his murder and attempted murder convictions. On March 27, 2019, the prosecution filed a response stating that appellant acted with intent to kill, and also acted with reckless indifference to life as a major participant to a crime. On April 23, 2019, the court appointed counsel for appellant, who on October 31, 2019 filed a reply on behalf of appellant. That brief asserted appellant had stated a prima facie case for relief, that the record of conviction lacked sufficient evidence of malice, and that the record did not

8

establish appellant was a major participant who acted with reckless disregard for life.

The trial court denied the petition by a written order dated February 4, 2020. The trial court noted the jury had not been instructed on felony murder or murder under a natural and probable consequences theory. Although acknowledging that the instructions on implied malice contained a natural and probable consequences component, the court noted that the jury had found express malice, i.e., a specific intent to unlawfully kill, when it convicted appellant of attempted murder. Because appellant was an aider and abettor who acted with intent to kill, he would still be convicted under the statutes for murder as amended by Senate Bill 1437, and he was not entitled to relief under section 1170.95.

## III. DISCUSSION

### A. *Record of Conviction*

Appellant argues the trial court erred in denying his section 1170.95 petition without issuing an order to show cause and holding an evidentiary hearing as required by section 1170.95, subdivisions (c) and (d)(1). He submits the court should not have considered the record of conviction to determine that he directly aided and abetted the killer in this case and acted with an intent to kill, and claims that once he filed a petition that was facially adequate under section 1170.95, subdivision (b)(1), a prima facie case was established and could not be controverted by information in the record of conviction.

9

Because resolution of this issue primarily involves statutory interpretation, we apply a de novo standard of review. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 981 (*Drayton*).)

The issue of whether the record on appeal may be considered in determining whether a prima facie case has been made under section 1170.95 is currently pending in the Supreme Court. (*People v. Lewis* (2019) 43 Cal.App.5th 1128, 1138 (*Lewis*), review granted March 18, 2020, S260598; *Drayton, supra*, 47 Cal.App.5th at p. 975.)[4] Numerous courts of appeal have considered the issue and concluded that a finding of ineligibility for relief under section 1170.95 may be based on the record of conviction. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–331 (*Verdugo*), review granted March 18, 2020, S260493; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898, review granted August 12, 2020, S263219; *People v. Lee* (2020) 49 Cal.App.5th 254, 262, review granted July 15, 2020, S262459.)

Although the analogy is not perfect, we look to habeas corpus in determining whether the record on conviction is properly considered when determining whether to issue an order to show cause under section 1170.95. (*Drayton, supra*, 47 Cal.App.5th at pp. 977–978; *Verdugo, supra*, 44 Cal.App.4th at

---

[4] The *Lewis* case also involves the issue of whether it is error to make this determination without first appointing counsel, and at what stage of the section 1170.95 proceeding counsel must be appointed. (*Lewis, supra*, 43 Cal.App.5th 1128.) Because counsel was appointed in this case, this issue is not before us.

10

p. 328.) When reviewing a petition seeking habeas corpus relief, a court evaluates it by asking whether the allegations, if taken as true, provide grounds for relief, but it is not precluded from looking to the record on appeal if it directly contradicts the allegations in the petition. (*Drayton*, at p. 978–980.)

Additionally, when reviewing a section 1170.95 petition, "[a]llowing the [superior] court to consider its file and the record of conviction is . . . sound policy. . . . 'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of a petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief. For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' " (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138, quoting Couzens, Bigelow, & Prickett, Sentencing California Crimes (The Rutter Group Oct. 2019 update) Ch. 23, § 23:51(H)(1), pp. 23–150 to 23–151.)

We therefore conclude that in determining whether to grant an order to show cause under section 1170.95, "[t]he trial court should not evaluate the credibility of the petition's

assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

In this case, a review of the readily ascertainable facts in the record of conviction shows that appellant is not entitled to relief under section 1170.95 because he is not "[a] person convicted of felony murder or murder under a natural and probable consequences theory" (§ 1170.95 subd. (a)) and *could* still "be convicted of first or second degree murder" after the enactment of Senate Bill 1437 (*id*. subd. (a)(3)).  The jury did not receive instructions that it could convict appellant based on felony murder or the natural and probable consequences doctrine at trial, but was instructed only under a theory of direct aiding

12

and abetting, which remains a valid theory after Senate Bill 1437. (*Gentile*, *supra*, 10 Cal.5th at p. 848.)

The jurors were given a version of CALCRIM No. 400 that advised them a person could be guilty of a crime as either a perpetrator or an aider and abettor, and the prosecution was proceeding under a theory that Peters was the perpetrator (shooter) and appellant was an aider and abettor. CALCRIM No. 401 defined aiding and abetting to require, "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." The court gave CALCRIM No. 520, which provided in part, "There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendants acted with express malice if they unlawfully intended to kill. [¶] The defendants acted with implied malice if: [¶] 1. They intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time they acted, they knew their act was dangerous to human life; [¶] AND [¶] 4. They deliberately acted with conscious disregard for human life." (Italics added.)

The trial court's written opinion suggests a concern about whether an aider and abettor may be convicted of second degree

13

murder based on an implied malice theory after the enactment of Senate Bill 1437, given that it is based on an act, the "natural and probable consequences" of which are dangerous to life. However, implied malice is a distinct concept from the natural and probable consequences doctrine, and does not purport to impute malice from the commission of some other criminal act, as is now prohibited under Senate Bill 1437.  (§ 188, subd. (a)(3); *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056–1058, review granted September 23, 2020, S263939) [aider and abettor may be convicted of directly aiding and abetting an implied malice murder after Senate Bill 1437].)  An aider and abettor may still be convicted of implied malice murder when the defendant personally harbors implied malice.  (*Gentile, supra,* 10 Cal.5th at p. 850.)

In any event, as the trial court noted, appellant was convicted of attempted murder based on his aiding and abetting of the same shooting that gave rise the murder conviction, having been instructed by CALCRIM No. 600 that attempted murder requires a determination that "the defendants intended to kill that person."  (See *People v. Lee* (2003) 31 Cal.4th 613, 624*; McCoy, supra*, 25 Cal.4th at p. 1118 [defendant who is guilty of attempted murder under a direct aiding and abetting theory must have the specific intent to kill].)  An intent to kill is the equivalent of express malice, at least when there is no question of justification or excuse, and by finding appellant guilty of attempted murder, the jury necessarily found that appellant acted with intent to kill or express malice when he aided and

14

abetted the second degree murder.  (See *People v. Moon* (2005) 37 Cal.4th 1, 29; *People v. Smith* (2005) 37 Cal.4th 733, 741.)

The superior court's denial without issuing an order to show cause was appropriate.  (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [upholding summary denial of § 1170.95 petition in case where defendant convicted of second degree murder where record of conviction showed that jury not instructed on second degree murder felony-murder rule or doctrine of natural and probable consequences].)  Because appellant was convicted of directly aiding and abetting a second degree murder, the jury necessarily found he acted with malice aforethought.  This means he could still be convicted of murder after the passage of Senate Bill 1437, and that he is not entitled to relief under section 1170.95. (§ 1170.95, subd. (a)(3).)

B. *Attempted Murder*

Appellant argues he was entitled to resentencing under section 1170.95 on his attempted murder conviction.  The Attorney General argues that relief is not available because Senate Bill 1437 and section 1170.95 apply only to murder, and not to attempted murder.  We apply a de novo standard of review (*People v. Flores* (2020) 44 Cal.App.5th 985, 992) and reject appellant's claim.

The Supreme Court has granted review on this issue and shall soon provide guidance.  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103–1105, review granted Nov. 13, 2019, S258175; see also *People v. Munoz* (2019) 39 Cal.App.5th 738,

15

749–751, review granted Nov. 26, 2019, S258234; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015–1016, review granted March 11, 2020, S259948; *People v. Larios* (2019) 42 Cal.App.5th 956, 967–968, 970, review granted February 26, 2020, S259983.) We note that in the meantime, while it appears the courts of appeal have expressed multiple perspectives on Senate Bill 1437's effect on the crime of attempted murder, no published case has ruled that section 1170.95 created an avenue to attack an attempted murder conviction that, like appellant's, is final. (See *People v. Love* (2020) 55 Cal.App.5th 273, 278–279, review granted Dec. 16, 2020, S265445 [one group of appellate courts "has held that Senate Bill 1437 did not eliminate the natural and probable consequences theory for attempted murder at all"; the "second group has held that Senate Bill 1437 eliminated the natural and probable consequences theory for attempted murder prospectively, but not retroactively"; the "last group has held that Senate Bill 1437 eliminated the natural and probable consequences theory for attempted murder prospectively and retroactively as to nonfinal convictions, but not retroactively as to final convictions"].)

We also note that in this case, even if we were to assume that section 1170.95 applies to attempted murder convictions, appellant would not be entitled to relief for the same reason he is not entitled to resentencing on his murder conviction. Quite simply, section 1170.95 potentially applies only to attempted murders based on the natural and probable consequences doctrine, and the jurors in this case were not instructed on that

doctrine. They were given CALCRIM Nos. 400 and 401, which instructed them on the theory of direct aiding and abetting, as well as CALCRIM No. 600, which advised them that an attempted murder conviction required a finding that "the defendants intended to kill [the victim]."

As relevant here, Senate Bill 1437 amended section 188 to provide that outside the felony-murder rule (which is not applicable to attempted murder; see *People v. Hammond* (1986) 181 Cal.App.3d 463, 468, fn. 5), a defendant may only be convicted of murder when malice is proven and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§188, subd. (a)(3).) Assuming this applies to attempted murder, the record of conviction in this case establishes that appellant was found to have acted with malice and that malice was not imputed based on the commission of a target crime.

C. *Presentation of New Evidence at Hearing*

Appellant claims he had a statutory right to present new evidence at a hearing under section 1170.95, subdivision (d)(3), and that by denying him an evidentiary hearing without issuance of an order to show cause, the court prevented him from presenting such evidence. We disagree.

The petition was properly denied without a hearing because the record on conviction demonstrated that, contrary to appellant's allegations, he was ineligible for relief because he was not convicted under a felony-murder theory or the natural and probable consequences doctrine. Appellant was convicted after a

17

jury trial and that conviction was affirmed on direct appeal; the issue whether he acted as a direct aider and abettor thus has been litigated. (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1138–1139.) Although there might be some circumstances where new evidence can be introduced to clarify an ambiguous record or determine facts in light of subsequent changes in the law (*People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 [court entitled to review evidence to determine whether defendant was a "major participant" who acted with a "reckless indifference to human life" as those terms were now defined after a change in the law]),a section 1170.95 petition is not a means by which a defendant can relitigate issues already decided. And, although appellant alleges he should have been allowed to present "new evidence" at an evidentiary hearing, he does not describe what such evidence would be and had made no showing that the trial court ever denied a request to present such new evidence.

## IV. DISPOSITION

The judgment is affirmed.

_____
NEEDHAM, Acting P.J.

We concur.

_____
BURNS, J.

_____
RODRIGUEZ, J. *

*People v. Coley* / A159927

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.