[Crim. No. 12140. First Dist., Div. Three. Nov. 22, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES MICHAEL LABEL, Defendant and Appellant.

## Counsel

Robert Dorne for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and James D. Hurwitz, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GOOD, J.**\*—A jury found appellant guilty of violating section 11912 (now 11352) of the Health and Safety Code (unlawful administration of a restricted dangerous drug). Judgment entered, he was sentenced to prison for the term prescribed by law. He appealed.

The charge arose out of the following facts:

Rebecca Rickel (18 years of age) was arrested on November 6, 1972 for possession of dangerous drugs (barbiturates ("yellows") and codeine). While in custody, she apparently adopted a cooperative attitude and wrote a statement of her activities during the weekend preceding her arrest. She also responded to interrogation by several officers and her statements were taken down in shorthand. She executed an affidavit that was either written by her or prepared by the sheriff's office from the information secured at the interrogation. The affidavit, dated November 10, alleged that appellant had

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

given her an intravenous injection of barbiturates on November 4 at a cabin at Lakecrest Cottages, Clear Lake Park, that was rented by appellant and one David Johnson (a codefendant who apparently entered a negotiated plea to secure a sentence concurrent with one still outstanding in Oregon). This affidavit was used in procuring a search warrant and was incorporated in the form for affidavits for search warrant used in Lake County. Therein it is recited that Ms. Rickel was personally present and sworn by the issuing magistrate, a judge of the superior court.

A search of the cabin discovered needles and hypodermic syringes in a waxed paper bag and "some tablets" under the front bottom of the refrigerator, where the affidavit stated she had seen David Johnson place them. A rent receipt issued to appellant and Johnson was also found. After the first witness had testified and at the commencement of the afternoon session of the first day of trial, appellant moved to suppress all evidence that was seized pursuant to the search. It was argued that the warrant was issued solely upon the affidavit of Ms. Rickel and that in the absence of an affirmative showing of her reliability there was no probable cause for the search. The motion was denied.

## I

■ Appellant contends that Rickel was an accomplice as a matter of law and that the trial court erred in not giving *sua sponte* instructions concerning the necessity of corroboration of accomplice testimony. We find no merit in this contention because section 1111 of the Penal Code defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Rickel could no more be charged with "administering" than a buyer of marijuana or other restricted substance may be charged with "selling." ■ The purchaser is not an accomplice of the seller either as to illegal possession or as to sale. (*People* v. *Galli* (1924) 68 Cal.App. 682, 684-685 [230 P. 20]; *People* v. *Mimms* (1952) 110 Cal.App. 2d 310, 314 [242 P.2d 331]; *People* v. *Hernandez* (1968) 263 Cal.App.2d 242, 247-248 [69 Cal.Rptr. 448].) *Hernandez* points out that purchasers could not be prosecuted for selling a forbidden narcotic to themselves (p. 248).

In Health and Safety Code section 11352 ("every person who . . . sells, furnishes, administers, or gives away" etc.) it is obvious that the word "administers" is used as defined in Webster's Third International Dictionary: "2a: to mete out; DISPENSE." One cannot "sell" or "give away" to him-

self. Although one can "furnish" himself with an article and diabetics and persons suffering from allergies "administer" prescribed insulin or allergens to themselves, in the context of the section and its place in the penal provisions designed to control illicit substances we cannot believe that the Legislature intended to proscribe the self-administration of such substances and used "furnish" and "administer" as intransitives rather than in the same transitive sense that necessarily applies to the companion words, "sell" and "give away." The fact that we have never heard of a prosecution based upon self-administration of a controlled substance indicates that the construction here adopted is the construction given to the section by peace officers in its application since it was originally enacted. If a defendant were so charged, we believe that, as to him, the language of the section would be deemed unconstitutionally vague and uncertain (cf. 1 Witkin, Cal. Crimes (1963) p. 23) and that the construction we here adopt would be required by the rule that "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." (*People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401].)

In *People* v. *Galli, supra,* 68 Cal.App. at page 685, in discussing the Connecticut counterpart of Penal Code section 31, the court quotes with approval the following language: "The 'abetting' intended by it is a positive act in aid of the commission of the [defined] offense—a force, physical or moral, joined with that of the perpetrator in producing it. . . . The abettor, within the meaning of the statute, must stand in the same relation to the crime as the criminal—approach it from the same direction, touch it at the same point." The recipient of the injection is not a participant in the criminal act of administering in the same sense that the willing, if "passive," participant in sexual crimes participates in the proscribed act (clearly forbidden to both participants) and is therefore subject to prosecution, as held in *People* v. *Boud* (1955) 136 Cal.App.2d 572 [289 P.2d 44], *People* v. *Siegel* (1934) 2 Cal.App.2d 620 [38 P.2d 450] and *People* v. *Cox* (1951) 102 Cal.App.2d 285 [227 P.2d 290]. In addition to the cases cited *supra* holding that the purchaser of narcotics is not an accomplice to either the sale or possession of the seller, analogous conclusions were reached in abortion cases where the aborted woman has been held not to be an accomplice even though she procured the purchase of a catheter and other paraphernalia required by a defendant abortionist. (*People* v. *Alvarez* (1946) 73 Cal.App.2d 528 [166 P.2d 896]; cf. *People* v. *Wilson* (1944) 25 Cal.2d 341 [153 P.2d 720]; *People* v. *Clapp* (1944) 24 Cal.2d 835 [151 P.2d 237].)

## II

Appellant contends that probable cause was not shown for the issuance of the search warrant in that there was no showing that Rickel was a reliable informant. He asserts error in the denial of the Penal Code section 1538.5 motion to suppress made during the course of the trial. The trial judge rested his ruling upon the grounds (a) that under subdivision (h) of the code section, the motion was belated, and (b) that affiant Rickel was not an informant and that the affidavit was "a direct statement of a declarant as to what she saw and observed."

■ Subdivision (h) of section 1538.5 provides: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial . . ." The existence of the affidavit and its use in procuring the search warrant was succinctly referred to at the preliminary. It cannot be said that appellant was not aware of the affidavit and that opportunity to make his motion to suppress did not exist prior to the commencement of the trial. The denial of the motion as not timely was warranted. (*People* v. *Superior Court* (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202].)

■ Appellant further claims that counsel's neglect to make the motion reduced the trial to a farce and sham and cites *People* v. *Aikens* (1969) 70 Cal.2d 369 [74 Cal.Rptr. 882, 450 P.2d 258] and *People* v. *Martinez* (1974) to support his contention. *Aikens* is inapplicable. The decision in *Martinez* was rendered by the Court of Appeal of the State of California, Third Appellate District on January 3, 1974, being numbered Crim. 6998, and a hearing was granted by the Supreme Court on March 13, 1974 and is now pending in that court. Compliance with all of the procedures regulating the issuance of a search warrant were meticulously observed by the police authority in the case at bench. The affiant Rickel was taken before the issuing magistrate who had opportunity to observe her demeanor and to question her. Her affidavit contained admissions of illegal possession of drugs and set forth in specific detail her personal observation of criminal activity as well as incriminating statements she had heard appellant make. ■ When a search warrant is issued by a judge before whom a confidential informant had appeared, "the question is not whether the informant was reliable but whether the magistrate could reasonably rely upon the information supplied to him under the circumstances." (*People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 676 [101 Cal.Rptr. 193].)

*In re Golia* (1971) 16 Cal.App.3d 775, 781 [94 Cal.Rptr. 323], analogizes the rule that "the uncorroborated *testimony* of an accomplice is sufficient to establish probable cause to hold a defendant to answer" (citing cases) to reject the proposition that information received from a previously untested informant may never constitute probable cause for the issuance of a search warrant. The specificity of the Rickel affidavit and its content as including declarations against penal interest, in the totality of the circumstances under which the warrant was issued, furnished internal guarantees of reliability that bring this case clearly within the rules enunciated in *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150, 152, 154 [81 Cal.Rptr. 613, 460 P.2d 485], which we need not repeat. ▉▉▉ Because the trial judge was correct as to both of the reasons given for the denial of the motions, appellant's contention that counsel was inadequate or incompetent fails. Appellant was not deprived of a crucial defense because the unmeritorious motion was not timely.

## III

▉▉▉ Appellant contends that he was denied due process in violation of the Sixth Amendment because the trial court sustained Rickel's invocation of the Fifth Amendment, thereby restricting or limiting cross-examination as to her use, possession or sale of drugs before November 3, 1972. Pursuant to Penal Code section 1324 the court had entered its order granting immunity from prosecution on any drug offenses she was involved in during the period November 3 to 6, 1972, in exchange for her testimony as to events during that time. On cross-examination, she asserted her Fifth Amendment privilege as set out in footnote 1 which we append *post,* at page 776. Appellant argues another instance wherein an objection was placed by the prosecution to a question that went to the substance of what the witness had told the probation officer, apparently during an interview in connection with her probation report. The objection was predicated upon the confidentiality of such conversations and was properly sustained. The invocation of the Fifth Amendment privilege was not involved.

▉▉▉ It is the burden of the defense to challenge such invocation. Where challenged, the invocation of the privilege calls for a determination of legal and factual issues. (Witkin, Cal. Evidence (2d ed.) p. 832.) Where a question is one that is incriminating on its face, no difficulty is presented. If it does not clearly call for an incriminating answer, the court must determine the danger of incrimination and rule in favor of or against the privilege. (Witkin, *supra,* at p. 869.) The record here shows no challenge was made nor any request that the court require answer to questions that drew the claim of

privilege. Although no challenge was made, as a matter of sound jury trial tactics, defense counsel was meticulous in making it clear that any refusal was based upon self-incrimination. But the questions clearly called for incriminatory answers and related to possession and, possibly, sales of contraband by the witness on occasions other than during the time period as to which she had been granted immunity. Because it was not called upon to do so, the trial court did not uphold an invocation of the privilege.

■ Appellant's contention on appeal is essentially an attack upon the propriety of a limited rather than general grant of immunity under Penal Code section 1324. It may be conceded that the time limitation did have the effect of limiting cross-examination in the manner contended by appellant. But it does not follow that appellant was denied due process by reason of a partial diminution of his right to full confrontation rights. None of the cases cited by appellant hold or imply that a witness who is granted immunity for some acts is deemed to have waived Fifth Amendment rights as to other acts and may thus be compelled to testify concerning acts not embraced within the grant. Under Penal Code section 1324 a judge may grant immunity only upon the written request of the Attorney General or a district attorney. The decision to initiate the request rests in the sole discretion of the prosecuting attorney. (*People* v. *Pineda* (1973) 30 Cal.App.3d 860, 867-868 [106 Cal.Rptr. 743].) The fact that a defendant does not have the same right is not a denial of equal protection. (*People* v. *Traylor* (1972) 23 Cal.App.3d 323 [100 Cal.Rptr. 116].) We are of the opinion that to require a prosecuting attorney to grant blanket immunity for any and all criminal acts as the price of testimony under section 1324 would completely frustrate the purpose of said section. We see no impropriety in limiting the immunity to designated crimes committed within a specified period of time. It follows that the immunized witness may not be compelled to testify as to possible criminal involvement at other times. As to such involvement, any witness stands in the same position as any other witness and a defendant's right to cross-examination is limited by Evidence Code sections 940 and 787.[2] Neither case authority, constitutional provision or statute cited by appellant supports the proposition that the salutary latitude of cross-examination rights granted to defendants in criminal cases licenses an inquiry into unimmunized crimes or diminishes Fifth Amendment privileges and other statutory protection accorded to all witnesses.

[2]Section 940: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."

Section 787: "Subject to Section 788 [prior felony conviction], evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness."

## IV

Appellant was committed to the Department of Corrections for a period not to exceed 90 days for the purposes of a Penal Code section 1203.03 diagnostic report and recommendation. The report and recommendation was prepared in something less than 60 days and he was returned to court for further proceedings about 62 days after such commitment. Corrections recommended prison rather than probation. At the hearing thereon, the court denied his application for probation and sentenced him to prison. During the course of these proceedings when asked if he had legal cause why judgment should not be pronounced, appellant complained that correctional counsel who prepared the social evaluation, R. O. Saire, was biased and that other correctional officers participating in the report simply went along with a prejudiced recommendation. He said two correctional officers (one of whom prepared the vocational evaluation indicating that his excellent opportunity for stability of employment as an apprentice meat cutter augured that "the community had adequate resources, insofar as employability is concerned" to insure steady work) had told him he should "get another counselor because they felt this man [Saire] was nuts." Appellant asked to be sent back to finish his 90 days and talk to another counselor. The judge did not accede to his request.

■ Appellant now contends that "where significant question was raised at sentencing as to the potential bias of the diagnostic report, the trial court's pronouncement of sentence was arbitrary and a violation of the Sixth Amendment due process right to confrontation." But defendant did not ask that any counselor or member of the corrections staff be produced for cross-examination. The point not having been properly raised in the trial court cannot be considered on appeal. (*People* v. *Clements* (1962) 202 Cal.App.2d 284, 287 [20 Cal.Rptr. 766]; *People* v. *Walker* (1968) 266 Cal.App.2d 562, 567-568 [72 Cal.Rptr. 224].) Again, because of the claim of inadequate representation, we comment that we cannot fault trial counsel for not making such request. The diagnostic report is fair on its face and the adverse recommendation is explained in detail. Further, the record also shows that the probation officer had first recommended probation but changed that recommendation the next day because an updated arrest record, not available when the first recommendation was made, showed that on January 22, 1973 (with the present charges pending), appellant had been granted probation for a three-year term for a Health and Safety Code section 11530 violation that had occurred less than one month before the present involvement. But 17 days after this grant of probation appellant was arrested in Contra Costa County for drunk driving and possession of narcotics. The second recommendation was for sentencing pursuant to Penal

Code section 1168. It is well settled that probation is an act of clemency that rests within the sole discretion of the trial court and neither the recommendation of a probation officer nor of the diagnostic facility is per se binding upon the court. Its order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion. (*People* v. *Keller* (1966) 245 Cal.App.2d 711 [54 Cal.Rptr. 154]; *People* v. *Ozene* (1972) 27 Cal.App.3d 905 [104 Cal.Rptr. 170].) In view of the detail in the diagnostic report as well as the probation officer's report, the claim of bias on the part of one counselor was clearly without foundation and there was no abuse of discretion in the orders made. Counsel, as a matter of sound tactics, may well have refrained from placing an idle demand for continuance, hoping that his client would receive a Penal Code section 1168 commitment.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1975.

---

## APPENDIX

*Footnote 1*

*RT 58*

"Q While you were up here did you meet a fellow named Potts?
"A Yes, I did.
"Q And you started to live with him, right?
"A I refuse to answer the question.
"Q On the basis that it might tend to incriminate you?
"A Yes."

*RT 59*

"Q (by Mr. Schaal) You have knowledge that he dealt in drugs, do you not?
"A I have heard about it, but I haven't seen."

*RT 60*

"Q Have you ever used drugs before November 14, or 4th?
"A I refuse to answer on the grounds I may be incriminated.
"Q Have you ever used LSD?
"A No.
"Q Do you ever recall having a conversation—First of all do you know what acid is?
"A Yes.
"Q What's acid?
"A Well, no, I'll rephrase that. I don't know exactly what it is, just that it is a drug.
"Q Well, do you ever recall telling the probation department of this County, Mr. Hoover—

"Mr. Hastings: Your Honor, I am going to object to that. I believe we might be getting into confidential statements.
"Mr. Schaal: Then she can claim the privilege.
"The Court: Well, I'll sustain the objection."

*RT 62*

"Q Do you remember the last time you had a yellow in your possession prior to November 4? Prior to November 4 do you remember the last time you had a yellow in your possession?
"A Not on me, I didn't have any.
"Q Well, you have never had a yellow in your possession prior to November 4; is that your testimony?
"A I'm saying that I didn't have any that was mine that was on me before the 4th.
"Q Well, in the past you have had these yellows in your pockets, right?
"A I refuse to answer that."

*RT 70*

"Q And your testimony I gather is that these drugs make it difficult for you to remember what happened?
"A Some things, yes.
"Q You have had drugs in the past that have blocked your memory a great deal more than these drugs, have you not?
"A I refuse to answer the question.
"Q When was the last time you had any narcotic prior to November 3?
"A I refuse to answer.
"Q Have you had occasions in the past prior to November 3 when you have difficulty remembering things that have happened?
"A I refuse to answer.
"Mr. Schaal: I think that's all at this time, Your Honor. I reserve the right to recall this witness."

*RT 119*

"Q (by Mr. Schaal) Have you ever been involved in the selling of narcotics?
"A I refuse to answer."
 We may note, however, that immediately before the last question, the following colloquy occurred in the jury's presence:

*RT 119*

"Q And then do you remember me asking you, 'Have you ever been involved in the sale of drugs?' This is line 26 on page 18 [preliminary transcript]. And you answer, 'Yes.'
"Mr. Hastings: Your Honor, I will object to that because at the preliminary hearing that question was objected to and sustained. And I would ask that the jury be told to disregard that answer and that question."