[No. B038550. Second Dist., Div. Five. Feb. 20, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ANTONIO CATTANEO, Defendant and Appellant.

1578

COUNSEL

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Mark Alan Hart and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TURNER, J.—

## I. PROCEDURAL HISTORY

In this appeal, Richard Antonio Cattaneo challenges his convictions for sale, furnishing, or transportation of cocaine on the ground that the evidence was insufficient to support the convictions for aiding and abetting the sales of the controlled substance. He also contends that the trial court erred in denying him probation and in sentencing him to the midterm of four years. We have raised the issue of the lawfulness of the order staying the five-year enhancement that was imposed pursuant to Health & Safety Code section 11370.4, subdivision (a)(2). We affirm defendant's convictions and the concurrent four year terms for cocaine sale. However, as will be noted, the order staying the enhancement is reversed and the case is remanded with directions to either strike or impose the enhancement.

Defendant was charged by information and found guilty by a jury of two counts of sale, furnishing, or transportation of a controlled substance in violation of Health and Safety Code section 11352. The jury also found the special allegations contained in count 2 that defendant sold 57 grams of a substance containing cocaine hydrochloride within the meaning of Penal Code section 1203.073, subdivision (b)(1) and the substance containing cocaine exceeded 10 pounds by weight within the meaning of Health and Safety Code section 11370.4, subdivision (a) (2) to be true.

Defendant was sentenced to concurrent prison terms of four years on counts 1 and 2. The five-year enhancement for sale of more than ten pounds of cocaine (Health & Saf. Code § 11370.4, subd. (a)(2)) contained in count 2 was imposed and then ordered stayed.

## II. THE FACTS

There were two witnesses who offered relevant testimony concerning the charges involving defendant. The first witness, Deputy Narcizo Reaza of the Los Angeles County Sheriff's Department, stated that he had a conversation with an informant named David. The deputy was told by David that defendant was looking for a "large scale" narcotics seller. The informant, David, had known defendant for several years. On December 16, 1986, David and Deputy Reaza, who was working in an undercover capacity, met with defendant at a Tiny Naylor's restaurant in Arcadia. Deputy Reaza,

who used the name Steve in his undercover role, said that he was the "man with the merchandise."

Defendant then took the deputy to another table. There, defendant introduced Deputy Reaza to Ronald Caiello (Caiello). Defendant said to Caiello, " 'Ronnie, this is Steve. This is the man with the merchandise. The guy with the coke.' " Caiello responded, " 'I understand you have some good coke for sale.' " Defendant then excused himself and said, " 'You guys go ahead and talk your business. I'll be around.' "

After defendant left the table, Deputy Reaza and Caiello discussed a cocaine transaction. Caiello said that his source of cocaine "had dried up" and that "he was looking for another source." Deputy Reaza said that he "had some good cocaine for sale" at a price of $24,000 per kilogram. Caiello counter offered to buy the cocaine for $20,500 per kilogram. Deputy Reaza said that his $24,000 per kilogram figure was a "very good price." However, if Caiello "had a better price," Deputy Reaza offered to buy the cocaine from "him all day long." Caiello did not seem surprised by the deputy's offer to buy the contraband. However, Caiello did say that he never thought he would be selling the cocaine to Deputy Reaza.[1]

On December 24, 1986, Deputy Reaza purchased one-half kilogram of cocaine from Caiello. On December 31, the deputy purchased an additional seven kilograms of cocaine from Caiello. At the December 31 sale, Caiello and the deputy agreed to "deal some more cocaine." However, Caiello was immediately arrested thereafter.

Deputy Sheriff Jon Austin testified as to defendant's statements made following his arrest. Defendant said that he had a conversation with Caiello prior to being introduced to Deputy Reaza. During that conversation, Caiello asked defendant "if he knew anybody that wanted to buy large scale narcotics." Caiello in that conversation specifically mentioned cocaine. Defendant told Caiello that he did not know anyone who wanted to buy a large quantity of cocaine. However, defendant promised that if he became aware of somebody in the market for a large quantity of cocaine, he would "then get a hold of" Caiello later.

Defendant further stated that he later arranged for a meeting between Caiello and a person "involved in narcotics trafficking." Defendant admit-

---

[1] Caiello's hearsay statement that he never thought he would be selling to Deputy Reaza but would rather be purchasing cocaine was not received for the truth of the matter asserted in that hearsay declaration. Caiello said that he was "family" and that "if anything would happen that [the deputy's] legs would be broken."

ted that he introduced Deputy Reaza to Caiello at the Tiny Naylor's restaurant in Arcadia on December 16, 1986.

### III. DISCUSSION

#### SUFFICIENCY OF THE EVIDENCE

■ Defendant contends that the evidence was insufficient to support a conviction for aiding and abetting the two sales of a controlled substance since the only evidence indicated that defendant made the introduction for the sole purpose of purchasing the cocaine and he had no knowledge that Caiello was going to be the seller.[2] This argument is without merit.

■ The test for sufficiency of the evidence " 'is whether substantial evidence supports the conclusion of the trier of fact . . . .' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) This court must review the whole record in the light most favorable to the judgment below to determine if there is substantial evidence such that a reasonable trier of fact could have found that the prosecution sustained its burden of proving beyond a reasonable doubt that

---

[2] Defendant relies on what has been called the "procuring agent" defense. (*Lewis* v. *United States* (D.C. Cir. 1964) 337 F.2d 541, 543 [119 App.D.C. 145]; *Vasquez* v. *United States* (9th Cir. 1961) 290 F.2d 897, 898.) This defense arose where the defendant purportedly could not be found to have acted as an exclusive agent of the buyer and was thereby considered to be a principal in the purchase rather than the sale. (*People* v. *McGhee* (Colo.Ct.App. 1983) 677 P.2d 419, 421-422.) However, the defense began to meet its demise with the congressional enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 801 et seq.) which repealed the Harrison Act. Under the 1970 act, the definition of "sale" became less important and the federal circuits that considered the issue unanimously held that the "procuring agent" defense was no longer a valid defense. (*United States* v. *Snow* (4th Cir. 1976) 537 F.2d 1166, 1168-1169; *United States* v. *Marquez* (10th Cir. 1975) 511 F.2d 62, 64; *United States* v. *Pierce* (D.C. Cir. 1974) 498 F.2d 712, 713 [162 App.D.C. 170]; *United States* v. *Masullo* (2d Cir. 1973) 489 F.2d 217, 220-221; *United States* v. *Pruitt* (8th Cir. 1973) 487 F.2d 1241, 1245; *United States* v. *Hernandez* (9th Cir. 1973) 480 F.2d 1044, 1046-1047.)

The federal act served as the basis for the Uniform Controlled Substances Act which was approved in 1970 by the National Conference of Commissioners on Uniform State Laws in order "to achieve uniformity between the laws of the several States and those of the Federal government" in light of Congress' enactment of the 1970 Comprehensive Drug Act. (9 West's U.Laws Ann., pt. II (1988) Uniform Controlled Substances Act, Prefatory Note, p. 2.) A majority of the states have adopted the Uniform Act. (9 West's U.Laws Ann. (1989 Supp.) pp. 1-2.) Those states that have adopted the Uniform Act and confronted the issue of the continuing viability of the "procuring agent" defense generally have followed the well-reasoned lead of the federal courts and declared the defense to be no longer valid. (*McKissick* v. *State* (Ala.Crim.App. 1987) 522 So.2d 3, 4; *State* v. *Sharp* (1983) 104 Idaho 691 [662 P.2d 1135, 1139]; *Harwood* v. *State* (Okl.Cr.App. 1975) 543 P.2d 761, 763-764.) Some states such as California have never recognized the defense. (*People* v. *Shannon* (1959) 15 Ill.2d 494 [155 N.E.2d 578, 580]; *State* v. *Allen* (Me. 1972) 292 A.2d 167, 170-172; *State* v. *Baltier* (1973) 109 Ariz. 96 [ 505 P.2d 556, 557].)

defendant was guilty. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].) ▇ The issue in this case is not the role Caiello ultimately played as a seller rather than a buyer. Rather, it is whether defendant can be convicted of the acts of Caiello for selling the cocaine when defendant's intent at the December 16 meeting at the Tiny Naylor's restaurant in Arcadia was to facilitate the purchase of cocaine by Caiello from Deputy Reaza.

As an intermediary, defendant may be criminally liable for the ensuing contraband sales. ▇ The California Supreme Court has held, "[O]ne who acts as a go-between or agent of either the buyer or seller clearly may be found guilty of furnishing as an aider and abettor to the seller." (*People* v. *Edwards* (1985) 39 Cal.3d 107, 114 [216 Cal.Rptr. 397, 702 P.2d 555], fn. 5; *People* v. *Richards* (1961) 198 Cal.App.2d 465, 469-471 [17 Cal.Rptr. 845].) Courts in other states have reached similar conclusions. (*State* v. *Hecht* (1984) 116 Wis.2d 605 [342 N.W.2d 721, 731]; *Loder* v. *State* (1976) 140 Ga.App 166 [230 S.E.2d 124, 127], vacated by 238 Ga. 200 [232 S.E.2d 71], reaffirmed in 141 Ga.App. 665 [ 234 S.E.2d 132]; *State* v. *Mansir* (Me. 1982) 440 A.2d 6, 7.) Defendant, citing *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318], argues that the prosecutor was required to prove the existence of a specific intent on defendant's part to sell cocaine or to facilitate the particular sales ultimately made by Caiello. Such is not the law. ▇ In *People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392], the Supreme Court held: "[A] defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury."

▇ Therefore, the mental state that the prosecution was required to prove was that defendant intended to encourage or facilitate Caiello's commission of the crime of a large scale cocaine sale. (41 Cal.3d 1, 12, fn. 5.) Defendant's intent to encourage or facilitate a major drug transaction was demonstrated by substantial circumstantial evidence. In his confession to Deputy Austin, defendant related that Caiello expressed a desire to find a large scale narcotics purchaser several weeks prior to the December 16 meeting in Arcadia. Caiello asked defendant, "if he knew anybody that wanted to buy a large quantity of cocaine." Defendant did not know of a

prospective major purchaser of Caiello's cocaine then. However, if he met somebody who wanted to buy a large quantity of cocaine, defendant promised to "then get a hold" of Caiello. Once defendant became aware of Deputy Reaza's identity through the informant, David, the meeting with Caiello was arranged at the Tiny Naylor's restaurant. Defendant introduced Deputy Reaza to Caiello. Defendant's intent was further evidenced by his statements that Deputy Reaza was " 'the man with the merchandise. The guy with the coke.' "

Once that intent was formed, defendant's liability extended to the natural and reasonable consequences of the acts he knowingly and intentionally encouraged. ■ "The critical element which must be found to establish vicarious liability for an unplanned offense is that the offense was in fact a natural and probable consequence of the targeted offense." (*People* v. *Jones* (1989) 207 Cal.App.3d 1090, 1096 [255 Cal.Rptr. 464].) It is a question of fact as to whether the crime charged is the natural and probable consequence of the planned offense. (*People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Luparello* (1986) 187 Cal.App.3d 410, 443 [231 Cal.Rptr. 832]; *People* v. *Hammond* (1986) 181 Cal.App.3d 463, 469 [226 Cal.Rptr. 475].) The jury must be instructed that it must make such a finding. (*People* v. *Jones, supra,* 207 Cal.App.3d at p. 1096; *People* v. *Hammond, supra,* 181 Cal.App.3d at p. 469.)[3]

■ A reasonable trier of fact could have found that the large scale drug sales that ultimately occurred were a natural and probable consequence of the planned crime (major drug purchases) that defendant admitted that he aided. Defendant agreed to introduce two large scale narcotics traffickers who naturally would be involved in significant cocaine transactions. David, the informant, said that defendant was looking for a large scale cocaine seller. Caiello asked defendant to contact him if defendant found anyone who wanted to buy "large scale narcotics" which specifically meant cocaine. The jury could have reasonably concluded that defendant knew that Caiello had access to large amounts of cocaine and would sell them. Furthermore, both transactions were concluded within 15 days after

---

[3] In this case, unlike in *Hammond*, the jury was properly instructed. The jury was given CALJIC No. 3.00 as revised in 1987. The instruction is as follows: "The persons concerned in the [commission] of a crime who are regarded by the law as principals in the crime thus [committed] and equally guilty thereof include: 1. Those who directly and actively [commit] the act constituting the crime, or 2. Those who aid and abet the [commission] of the crime. [One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged. It is for you, the jury, to determine whether the defendant is guilty of the crime allegedly contemplated, and if so, whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged.]" These instructions fully informed the jury on the question of defendant's liability for crimes committed by a confederate.

the December 16 meeting. Therefore, the fact that when defendant walked away after the December 16 introduction at the Tiny Naylor's restaurant, Deputy Reaza had said that he was interested in selling cocaine does not release defendant from criminal liability for the ensuing sales as a matter of law.

Finally, the only line of authority that even remotely relates to the issue in this case is discussed in *People* v. *Label* (1974) 43 Cal.App.3d 766, 770 [119 Cal.Rptr. 522]. *Label* stands for the proposition that "one who merely purchases drugs is not guilty of furnishing as an aider and abettor . . . ." (*People* v. *Edwards, supra*, 39 Cal.3d at p. 114, fn. 5.) However, *Label* is inapplicable to the present case. In *People* v. *Edwards, supra*, 39 Cal.3d at page 14, footnote 5, the Supreme Court very narrowly construed *Label* so that it applied only to a contraband purchaser or "an equal partner in a copurchase . . . ." The high court held that "[w]here one of the copurchasers takes a more active role in instigating, financing, arranging or carrying-out the drug transaction, the 'partnership' is not an equal one and the more active 'partner' may be guilty of furnishing to the less active one." (*People* v. *Edwards, supra*, 39 Cal.3d at p. 114, fn. 5.) Since defendant was neither a purchaser nor an equal partner in a copurchase, the theory enunciated in *Label* is inapplicable to the present case.

## SENTENCING—DENIAL OF PROBATION

■ Citing Penal Code section 1203.073, subdivision (a)[4] and California Rules of Court, rule 416,[5] defendant claims that the trial court should have granted him probation under the unusual case exception in Penal Code section 1203.073. ■ Generally, the grant or denial of probation is within the broad discretion of the trial court and "will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner." (*People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995].)

■ Defendant claims that subdivisions (a)-(e) and (g) of rule 416 provide probation for defendants who would be "substantially more culpable" than him, and adds that denying him probation under subdivision (f) ren-

---

[4] Penal Code section 1203.073, subdivision (a) provides: "(a) A person convicted of a felony specified in subdivision (b) may be granted probation only in an unusual case where the interests of justice would best be served; when probation is granted in such a case, the court shall specify on the record and shall enter in the minutes the circumstances indicating that the interests of justice would best be served by such a disposition."

[5] Unless otherwise indicated all further rule references are to the California Rules of Court.

ders the unusual case exception "meaningless."[6] However, the argument is of no avail. First, the trial court may but is not required to find the case unusual if the relevant criterion is met under each of the subdivisions. Second, the sale of December 31 involved over 15 pounds of cocaine. Under those circumstances "the interests of justice" would not be served by granting probation. Rule 416 permits a grant of probation only "where the interests of justice would best be served by granting probation." Third, the crimes that defendant were convicted of involved planning and were not the result of accident or misfortune. Fourth, the probation officer recommended that probation be denied. Fifth, defendant had previously been convicted of misdemeanors on two occasions. Sixth, the probation officer's report contains no evidence that defendant ever expressed remorse. Under those circumstances, the trial court cannot be said to have exercised its discretion in an arbitrary or a capricious manner which justifies disturbing the decision on appeal.

### Sentencing—Failure to Impose the Low Term

■ Defendant argues that, pursuant to rules 423 and 439(a), the trial court erred in sentencing him to the midterm because the factors in mitigation outweighed those in aggravation. Defendant claims that the factors in mitigation related to the crime under rule 423(a) were that: (1) he had a

---

[6] Rule 416 provides: "When the granting of probation is prohibited by statute except in unusual cases where the interests of justice would best be served by granting probation, the following facts may indicate the existence of an unusual case:

"(a) If the defendant was armed with a deadly weapon at the time of the perpetration of the crime or of arrest, the fact that the crime was committed without advance planning or under circumstances of great provocation, and the defendant has no recent record of committing crimes of violence.

"(b) If the defendant inflicted great bodily injury or used or attempted to use a deadly weapon in the perpetration of the crime, the fact that the crime was committed without advance planning or under circumstances of great provocation and the defendant has no recent record of committing crimes of violence.

"(c) If the defendant has suffered one or more previous felony convictions, the fact that the last felony conviction and release from incarceration occurred a substantial time prior to the current crime, and during the interim the defendant led a life free from serious violation of the law.

"(d) The fact that the defendant participated in the crime under circumstances of coercion or duress not amounting to a defense.

"(e) The fact the crime was committed because of psychological problems not amounting to a defense, that psychological or psychiatric treatment will be required as a condition of probation, and that the court is convinced that the treatment has a high likelihood of being successful and that the defendant will not be a danger to others.

"(f) The fact that the defendant is youthful or aged, and has no significant record of prior criminal offenses.

"(g) The fact that the defendant or a member of his immediate family is in extremely poor health, and imprisonment of the defendant would be likely to seriously worsen that health problem."

minimal role in the crime; (2) although he made the initial contact, it was only for the purchase of obtaining cocaine and not selling it; and (3) the undercover agent escalated the crime to one of sales as opposed to purchase. He claims that the mitigating factors related to him that the court erroneously weighed were (1) his minimal prior criminal history and (2) an admission of wrongdoing by not testifying at trial and perjuring himself.

The trial court has broad discretion in weighing the aggravating and mitigating factors. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) The court was not required to discuss each of the factors independently in weighing the aggravating and mitigating circumstances. (*People* v. *Evans* (1983) 141 Cal.App.3d 1019, 1022 [190 Cal.Rptr. 633].)

The factors identified by defendant do not show an abuse of discretion. Furthermore, the court stated that it had read and considered the probation report. The record shows that the court listened to argument by both defense counsel and the district attorney and weighed the factors before imposing the midterm. The court also acknowledged the fact that defendant's participation was minimal and that defendant had only a minimal prior history of criminal involvement. Furthermore, as defendant admits, the court had as an aggravating factor the significant quantity of cocaine that was involved in this case. There has been no showing that the court abused its discretion under the facts of this case. Defendant deliberately set in motion events which led to two sales of cocaine which totaled sixteen and one-half pounds of cocaine. Under these circumstances, a state prison sentence of four years is very nominal.

### Sentencing—Stay of Enhancement

 The trial court ordered the five-year enhancement for the violation of Health and Safety Code section 11370.4, subdivision (a)(2) *stayed.* In staying the enhancement, the trial court imposed an illegal sentence, i.e., one which was not authorized by statutes that govern sentencing. (*People* v. *Brown* (1987) 193 Cal.App.3d 957, 961 [238 Cal.Rptr. 697].) While the trial court had discretion, pursuant to Health and Safety Code section 11370.4, subdivision (e), to strike the enhancement, it lacked authority to stay the time for the enhancement.

 In *People* v. *Santana* (1986) 182 Cal.App.3d 185, 190-191 [227 Cal.Rptr. 51], the court held, "The terms 'stay' and 'strike' are not legally synonymous. [Citation.] A stay is a temporary suspension of a procedure in

a case until the happening of a defined contingency. [Fn. omitted.] [¶] In contrast, a striking is an unconditional deletion of the legal efficacy of the stricken allegation or fact for purposes of a specific proceeding. It is tantamount to a dismissal. [Fn. omitted.]" In *Santana, supra,* the appellate court discussed the trial court's authority to stay the execution of a sentence enhancement under Penal Code section 667, subdivision (a). The court concluded that the trial court's purported stay of the time on the prior had the functional effect of striking and not staying the enhancement. (*Id.* at pp. 191-192.) The court determined that unless the prior serious felony was stricken under Penal Code section 1385 the trial court was required to impose a five-year enhancement and lacked authority to stay the execution. (*Ibid.*)

██ Likewise, in this case, the trial court was required to impose the additional term unless it chose to strike the enhancement. (Health & Saf. Code § 11370.4, subd. (e).) If a trial court elects to strike the enhancement pursuant to section 11370.4, subdivision (e), it is required to determine that there are circumstances in mitigation and to state the reasons in the record. (*Ibid.*) In the case at bar, while the court found factors in mitigation, it did so in the context of staying the enhancement, which it had no jurisdiction to do.

In passing sentence, the court has a duty to determine and impose the punishment prescribed by law. (Pen. Code, § 12; *People* v. *Floyd P.* (1988) 198 Cal.App.3d 608, 612 [244 Cal.Rptr. 269]; *People* v. *Santana, supra,* 182 Cal.App.3d at pp. 191-192.) ██ When an illegal sentence "is discovered while defendant's appeal is pending, the appellate court should affirm the conviction and remand the case for a proper sentence. [Citation.]" (*People* v. *Massengale* (1970) 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237]; *People* v. *Hickey* (1980) 109 Cal.App.3d 426, 436 [167 Cal.Rptr. 256]; *People* v. *Serrato* (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583 [189 Cal.Rptr. 855, 659 P.2d 1144], fn. 1.) In *Serrato,* the Supreme Court noted, "Such [an illegal] sentence . . . is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement. [Fn. omitted.]" (*People* v. *Serrato, supra,* 9 Cal.3d at p. 764.) Since the order staying the enhancement was in excess of the court's jurisdiction, it must be set aside. The case is remanded to the trial court and the trial court is to either impose or strike the five-year enhancement.

## IV. DISPOSITION

The judgment of conviction and the concurrent four-year terms imposed for the convictions of cocaine sale (Health & Saf. Code, § 11352) are

affirmed. The order staying the enhancement that was imposed pursuant to Health and Safety Code section 11370.4, subdivision (a)(2) is reversed. The case is remanded to superior court so that the court may exercise its discretion and impose or strike the five-year enhancement in compliance with Health and Safety Code section 11370.4, subdivision (e).

Ashby, Acting P. J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 7, 1990.