[No. B054178. Second Dist., Div. Seven. Jan. 12, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
ENRIQUE CARLOS ARANGO et al., Defendants and Appellants.

**COUNSEL**

Howard J. Shopenn, under appointment by the Court of Appeal, and Manuel U. Araujo for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George H. Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Donald E. de Nicola, Richard B. Cullather and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Appellant.

## OPINION

**WOODS, (Fred), J.**—Appellants Enrique Carlos Arango (Arango) and Pedro Antonio Rizo[1] (Rizo) were charged with sale or transportation of cocaine (Health & Saf. Code,[2] § 11352, subd. (a)), possession for sale of cocaine (§ 11351), and conspiracy to sell or transport cocaine (Pen. Code, § 182). A 10-year enhancement (the cocaine exceeded 25 pounds by weight) was alleged as to each charge (§ 11370.4, subd. (a)). After their motions to suppress evidence (Pen. Code, § 1538.5; Mun. Ct. Judge Larry P. Fidler) and set aside the information (Pen. Code, § 995; Super. Ct. Judge John H. Reid) were denied, appellants pled guilty to all three charges and admitted the 10-year enhancement allegations. Superior Court Judge Michael A. Tynan imposed his indicated sentence as to each appellant: the lower three-year term (§ 11352) plus a *five-year enhancement* (§ 11370.4, subd. (a)(2) [over ten pounds by weight of cocaine]), for a total state prison term of eight years. The court stayed the other counts and "struck" the 10-year, over 25 pounds by weight, enhancement (§ 11370.4, subd. (a)(3)).

The People appeal the sentence, and appellants Arango and Rizo appeal the denial of their motions to suppress evidence (Pen. Code, § 1538.5).

We affirm the denial of the suppression motions and reverse the sentence.

### FACTUAL BACKGROUND

Appellants' suppression motions were made during their preliminary hearing held before municipal court Judge Larry P. Fidler. Five prosecution and three defense witnesses testified. Testimony began March 2, 1990, and ended March 9, 1990. The magistrate rendered his decision and detailed findings on March 12, 1990. The reporter's transcript is 834 pages.

■    We summarize the suppression motion evidence according to the following standard of review: "A proceeding under [Penal Code] section 1538.5 to suppress evidence is a full hearing on the issues before . . . [a] finder of fact. [Citations.] The power to judge credibility of witnesses,

---

[1]German Diago Perez, also charged, is not a party to this appeal.

[2]Unless otherwise noted all statutory references are to the Health and Safety Code.

resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the [ ] court. On appeal all presumptions favor proper exercise of that power, and the [ ] court's findings—whether express or implied—must be upheld if supported by substantial evidence. [Citations.]" (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

A confidential, reliable informant told Torrance Police Officer Mock that German Diago Perez (a codefendant not party to this appeal) was involved in the distribution of multikilograms of cocaine. On or before January 26, 1990, the informant pointed out Perez to Officer Mock.

Officer Mock relayed this information to Torrance narcotics officers and also described Perez's car, a Buick with a specified license number.

On January 26, 1990, at approximately 7 p.m., Officer Thompson saw Perez driving the Buick. Perez drove into a plaza parking lot, parked, and remained in the car for five to ten minutes. Perez then exited, looked around, walked to a nearby telephone booth, and made a one-minute call. Repeatedly looking around, he then walked to a pizzeria. He entered, stood for about five to ten minutes, and left carrying a styrofoam cup. He went past the Buick, looked around, continued, entered a silver Ford, and sat for several minutes.

Officer Thompson communicated his observations and was joined by a surveillance team.

About 7:30 p.m. Perez, driving the Ford, left.

Sometime later appellant Rizo (and a woman) walked to the Buick, looked around, and entered. Rizo then drove the Buick from the parking lot. A dark Peugeot, driven by appellant Arango, followed. The surveillance team followed them.

The Buick and Peugeot drove in tandem for some distance and then both pulled into a gas station, parked, and Rizo and Arango conversed.

Both cars left the gas station, the Buick leading, entered a freeway, drove at speeds of 55 miles per hour, or slower, with Arango continuously checking nearby cars. The Peugeot was sometimes two car lengths behind the Buick and sometimes ten car lengths behind. They entered the 405 freeway, switched to the eastbound 60, and abruptly took an off-ramp. They then entered the 15 freeway, driving at 40 miles per hour.

The surveillance team, which maintained radio contact with Officer Mock, informed Officer Mock of the Arango-Rizo conduct. Officer Mock, an

experienced narcotics officer, advised them that Arango and Rizo were engaging in countersurveillance driving, and that such driving in conjunction with the car switch meant they were engaged in narcotics trafficking with the Buick being the "load car" (drugs or money would be in the trunk) and the Peugeot the countersurveillance car.

Approximately 9:15 p.m. the two cars exited the freeway and drove to 8655 Arlington in Riverside, an apartment complex with about two hundred units. Both entered a security gate. Rizo drove the Buick to an open carport area and parked in a middle stall.

The surveillance vehicles parked outside. Some officers, including Officer Chase, climbed over the wrought iron fence, went to the carport area and took surveillance positions, keeping the now unoccupied Buick in sight.

About 20 minutes later, Arango and Rizo left a second floor apartment and went to the Buick.

One of the officers identified himself to a resident of the apartment complex, had the security gate opened, and drove to the carport area opposite the Buick.

Officer Chase, about 75 yards away, saw Rizo and Arango open the Buick trunk and lean inside. He approached them and, when about four to five feet away, saw inside the trunk a trash bag with kilo shaped, brown, wrapped packages. Based upon extensive narcotic experience he believed the packages to be kilos of cocaine. When Rizo and Arango saw him, they slammed shut the trunk.

Other officers joined Officer Chase and they told Rizo and Arango—in Spanish—they were the police and to put their hands up. Arango began crying and repeatedly said, "I'm sorry, I'm sorry."

A police dog, trained in locating narcotics, was brought to the Buick but was distracted by a cat.

The officers opened the trunk and found ten kilos of cocaine in the trash bag, five kilos of cocaine in a shopping bag, and five kilos of cocaine in a sports bag.

## DISCUSSION

1. *Arango and Rizo appeal: motion to suppress*

■ Appellants contend the magistrate erred in denying their motions to suppress because (1) the officers unlawfully entered the apartment complex,

(2) appellants had a reasonable expectation of privacy in their open car trunk, and (3) no exigent circumstances justified the warrantless search of the car trunk. Appellants are mistaken.

Substantial evidence supports the magistrate's finding there was probable cause to detain appellants *before* they entered the apartment complex. To detain appellants and investigate the suspicious narcotics trafficking circumstances, the officers were entitled to climb the wrought iron fence and enter an open carport area where the Buick was parked. There was no trespass. (*People* v. *Thompson* (1990) 221 Cal.App.3d 923 [270 Cal.Rptr. 863]; *People* v. *Lloyd* (1989) 216 Cal.App.3d 1425 [265 Cal.Rptr. 422]; *People* v. *Abes* (1985) 174 Cal.App.3d 796 [220 Cal.Rptr. 277]; *People* v. *Seals* (1968) 263 Cal.App.2d 575 [69 Cal.Rptr. 861].) But even if climbing over the fence was a simple trespass it would not invalidate their subsequent observations. (*People* v. *Seals, supra,* 263 Cal.App.2d 575.)

Officer Chase's observations—seeing the distinctively shaped and wrapped kilos of cocaine in the open car trunk—were not a search since the kilos were in plain view. If not before, certainly then, the officers had probable cause to arrest appellants and search the car trunk. No search warrant was needed to search the closed trunk of an automobile, which is legally considered inherently mobile. (*United States* v. *Ross* (1982) 456 U.S. 798, 809 [72 L.Ed.2d 572, 583-584, 102 S.Ct. 2157]; *People* v. *Superior Court (Overland)* (1988) 203 Cal.App.3d 1114, 1118-1119 [250 Cal.Rptr. 458].)

The magistrate properly denied appellants' motion to suppress (Pen. Code, § 1538.5).

2. *People's appeal: unlawful sentence*

Section 11370.4 provides: "(a) [A] person convicted of a violation of . . . Section . . . 11352 . . . *shall* receive an additional term as follows: . . . (3) Where the substance exceeds 25 pounds by weight, the person shall receive an additional term of 10 years . . . . (e) Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Italics added.)

By its terms, the statute required the trial court to impose "an additional term of 10 years" *or,* "if it determine[d] that there are circumstances in

mitigation," to "*strike* the additional punishment." (Italics added.) The court did neither.[3]

■ Instead, the trial court, stating "I think since the codes specifically empower the court to strike the entire allegation[ ], the court certainly has the power to strike portions of it," "struck" the over-25-pounds-10-year enhancement and imposed an over-10-pounds-5-year-enhancement (§ 11370.4, subd. (a)(2)). In doing so, the trial court exceeded its authority. (*People v. Ruiz* (1992) 3 Cal.App.4th 1251, 1255 [5 Cal.Rptr.2d 122]; *People v. Harvey* (1991) 233 Cal.App.3d 1206 [285 Cal.Rptr. 158]; see also *People v. Pieters* (1991) 52 Cal.3d 894 [276 Cal.Rptr. 918, 802 P.2d 420]; *People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1588 [266 Cal.Rptr. 710]; cf. *People v. Vergara* (1991) 230 Cal.App.3d 1564 [282 Cal.Rptr. 90].) The sentences, not authorized by statute, were unlawful.

## DISPOSITION

The order denying appellants' motions to suppress (Pen. Code, § 1538.5) is affirmed. The sentences of each appellant (Rizo and Arango) are reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.[4]

Lillie, P. J., and Johnson, J., concurred.

---

[3]The court used the *term* "strike" but it did not unconditionally delete the legal efficacy of the allegation. (See *People v. Santana* (1986) 182 Cal.App.3d 185, 190 [227 Cal.Rptr. 51].)

[4]If, as *appears* to be the case, appellants Arango and Rizo pleaded guilty in reliance upon the trial court's sentence commitments, they are entitled to withdraw their guilty pleas and enhancement admissions. (See *People v. Ruiz, supra,* 3 Cal.App.4th 1251, 1256, fn. 3.)