Filed 1/8/24  P. v. Magana CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>FERNANDO MAGANA,<br><br>     Defendant and Appellant. | F085087<br><br>(Super. Ct. No. MCR046034B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  James E. Oakley, Judge.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2013, appellant Fernando Magana was 15 years old when he participated with others in a four-day crime spree. He was charged and prosecuted as an adult. In 2016, and pursuant to a plea agreement, appellant was convicted of the following four felonies:

(1)     Attempted murder (Pen. Code, §§ 664/187, subd. (a));[1]

(2)     Robbery (§ 211);

(3)     Attempted carjacking (§§ 664/215, subd. (a)); and

(4)     Activity in a criminal street gang (§ 186.22, subd. (a)).

Appellant admitted gang enhancement allegations (§ 186.22, subd. (b)(1)). He received an aggregate determinate prison term of 25 years 10 months.

Appellant did not appeal his criminal judgment. In 2022, he filed a petition for resentencing in the superior court. He asserted that his attempted murder conviction was no longer valid due to changes in the law. The trial court denied the petition, concluding appellant had been a major participant who had acted with reckless indifference to human life.

In the present appeal, we agree with appellant that substantial evidence does not support the trial court's ruling. An older gang member, Nicholas Castrejon, planned the robbery that led to the attempted murder. It was Castrejon who fired a shotgun when the store owner unexpectedly fired a handgun at Castrejon. Appellant did not plan this crime, he was unarmed, he did not provide the shotgun to Castrejon, he did not interact with the store owner, and nothing shows appellant intended for Castrejon to shoot at the owner. In short, substantial evidence does not establish that appellant held an intent to kill. Thus, we will reverse the trial court's order. The court shall grant the petition and vacate the conviction for attempted murder.

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

We further agree with appellant that, because his attempted murder conviction will be vacated, his criminal judgment will no longer be final. As such, he is entitled to the retroactive benefits of both Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32) (Proposition 57), and Senate Bill No. 1391 (2017–2018 Reg. Sess.) (Senate Bill 1391). Under current law, appellant could not have been prosecuted in adult court for the crimes he committed when he was 15 years old.[2] (Welf. & Inst. Code, § 707, subd. (a)(2); *People v. Keel* (2022) 84 Cal.App.5th 546, 563 [in general, persons under 16 years of age when they committed a crime may no longer be transferred to adult/criminal court].) Once appellant's petition for resentencing is granted and his attempted murder conviction is vacated, the trial court shall transfer this matter to the juvenile division for an appropriate disposition in accordance with these measures. (See *People v. Keel*, *supra*, 84 Cal.App.5th at p. 551 [imposing this remedy in a similar situation].) We reverse and remand for further proceedings.

## <u>BACKGROUND</u>

In 2016, and as part of his plea agreement, appellant testified in court against Castrejon. Castrejon was convicted of 18 felonies stemming from a four-day crime spree he conducted with other members of his gang, including appellant. Castrejon was 19 years old when this crime spree occurred and appellant was 15 years old. In 2018, we issued an unpublished opinion in which we resolved issues which Castrejon had raised. (*People v. Castrejon* (Aug. 28, 2018, F073584).) On the court's own motion, we take

---

[2]     In 2021, appellant filed a petition for writ of habeas corpus in the superior court seeking a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 to preserve a record for any future parole eligibility hearing. The superior court granted the petition, held the hearing, and admitted appellant's requested evidence. Appellant then appealed to this court. Appellant argued in his prior appeal to us that he should be remanded to the jurisdiction of the juvenile court based on retroactive laws applying to juveniles. In 2021, this court issued an unpublished opinion in which we held that appellant's judgment was final and he was not entitled to the retroactive benefits of Proposition 57 or Senate Bill 1391. (*People v. Magana* (Aug. 9, 2021, F080638).)

3.

judicial notice of the record and opinion in appellate case No. F073584. (Evid. Code, § 452, subd. (d).)

During Castrejon's trial, appellant admitted that he was a Norteño gang member. He testified that he and Castrejon committed crimes from January 21 through January 24, 2013. Appellant said that, while others participated at times, only he and Castrejon took part in all of the crimes during this crime spree. According to appellant, Castrejon used a shotgun in each of the crimes over those four days. (*People v. Castrejon*, *supra*, F073584.)

## I.     The First Day of the Crime Spree.

At about 4:00 a.m. on the first day of the crime spree, appellant, Castrejon and another gang member, Angel Barrios, drove to a convenience store in Castrejon's vehicle, a Buick. Barrios parked behind the store. Castrejon exited and was gone for "maybe a minute" before he ran back and told Barrios to leave. Castrejon explained that the door had been locked.

After driving away from the convenience store on January 21, 2013, they waited in a "field" because police were in the area. Near that convenience store, they drove past a residence and saw a victim warming up a Durango. Castrejon and Barrios got out and confronted the victim. At Castrejon's trial, appellant could not recall if Castrejon had held the shotgun, but he agreed he previously told officers that Castrejon had held the shotgun during this crime. Castrejon and Barrios took the Durango, and they followed appellant, who drove the Buick back to appellant's residence.

## II.     The Second Day of the Crime Spree, Including the Attempted Murder.

On January 22, 2013, at about 8:30 p.m., appellant and Castrejon, with two other gang members, drove the stolen Durango to a store. Appellant was a passenger.

According to appellant, Castrejon laid out a plan to rob a convenience store, and he instructed everyone regarding their roles. Appellant and another gang member were

4.

told to follow Castrejon, who would "have the gun up," and they would take property from inside the store.

Once they arrived at the store, Castrejon exited the Durango with a shotgun. Appellant and another gang member also got out. A store employee saw Castrejon, started yelling, and ran inside the store. As appellant turned the corner, he observed Castrejon with the shotgun up. Castrejon was yelling, "Put the fucking gun down." This caused appellant to pause. One of the store's owners fired a revolver at Castrejon, purposefully missing him. Castrejon fired back, narrowly missing the owner. At the sound of gunshots, appellant got down on the ground. He saw Castrejon lower his shotgun, and appellant ran to the car. Everyone got back inside the Durango and they drove away. Castrejon said somebody inside the store had started shooting. Castrejon seemed shocked about what had happened.

About 30 minutes after the shooting occurred, the gang members drove past "two ladies in a car" and somebody suggested that they steal their vehicle. The gang members followed the victims to a residence. When the victims parked in the driveway, appellant and Castrejon exited the Durango. Castrejon held a shotgun. After talking to the victims, Castrejon and appellant drove the victims' Honda back to appellant's residence.

## III.    The Third Day of the Crime Spree.

On January 23, 2013, close to midnight, appellant was driving the stolen Honda. Castrejon and Barrios were also present. They saw two people in a white Toyota Camry getting ready to get out of that car with some shopping bags. Appellant parked nearby. Castrejon jumped out and demanded the keys to the Toyota. Castrejon held a 12-gauge shotgun. Barrios jumped out of the car after Castrejon, but Barrios then jumped back into the car, saying they should leave. Barrios said it was "a set-up" and the stolen Honda had "a tracking device or something like that." Castrejon hopped back into the Honda and they drove away.

At Castrejon's trial, appellant recalled an incident with a lady and a trash can. Appellant was driving the stolen Honda. Barrios (in the front seat) and Castrejon (in the left back seat) were with him. They were looking for somebody to rob. Appellant stopped the Honda in front of a residence where a truck had just stopped. Castrejon hopped out holding the shotgun. A lady was near a trash can, and she "started screaming and begging [him] not to shoot." The lady picked up a trash can like she was going to shield herself. Castrejon got back inside the vehicle and they drove away.

## IV.     The Fourth Day of the Crime Spree.

On January 24, 2013, appellant, Castrejon, Barrios and two others drove in a Toyota belonging to appellant's mother. They went "looking for someone." According to appellant, Castrejon brought the shotgun. They eventually approached a group of people at a park. Everyone but appellant got out of the Toyota.

According to appellant, Castrejon got out with the shotgun, pointed it, and he ordered the victims to get down on the ground. Another gang member drove a victim's car away. Barrios got back inside the Toyota and Castrejon started yelling at Barrios, telling him to get out of that car. Appellant heard gunshots. Only Castrejon was still outside when the shots were fired. Castrejon got back into the Toyota and they drove away.

## V.      Appellant's Petition for Resentencing.

In 2022, appellant filed a petition for resentencing in the superior court. He alleged he was entitled to be resentenced because the law regarding attempted murder had been amended in 2019.

The trial court appointed legal counsel to represent appellant. The court issued an order to show cause and it held multiple hearings with the parties. The prosecution took the position that the attempted murder conviction was still valid because appellant had acted as a major participant with reckless indifference to human life.

6.

Appellant's trial testimony against Castrejon was provided to the trial court, which considered it in reviewing appellant's petition for resentencing. The court ruled that appellant had been a major participant in the underlying felony when the attempted murder had occurred, and appellant had acted with reckless indifference to human life. The court denied the petition for resentencing. According to the court, the totality of the four-day crime spree was instrumental in establishing appellant's intent for the attempted murder charge. Appellant was on notice that Castrejon was using a shotgun and appellant continued to participate in the crime spree.

## DISCUSSION

**I.  Substantial Evidence does not Support the Trial Court's Ruling.**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.). This amended both the felony-murder rule and the natural and probable consequences doctrine to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in an underlying felony who acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708.) Malice may no longer be imputed to a person based solely on his participation in a crime. (§ 188, subd. (a)(3).) A person convicted of attempted murder under the natural and probable consequences doctrine may file a petition for resentencing. (§ 1172.6, subd. (a).)

The parties agree, as do we, that the substantial evidence standard should be used to review the trial court's order denying the petition for resentencing. Under this standard, we review the record in the light most favorable to the judgment below. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) We look for evidence that is reasonable, credible and of solid value such that a reasonable trier of fact could find appellant guilty beyond a reasonable doubt. (*Ibid.*)

7.

### A. The evidence does not demonstrate appellant's intent to kill.

In denying the petition for resentencing, the trial court focused on whether appellant had acted with reckless indifference to human life and was a major participant in the underlying felony. In resolving this issue below, the court and parties relied on factors set forth in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) and *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). On appeal, the parties have focused extensively on the factors outlined in *Clark* and *Banks* in disputing whether the trial court should have granted the petition for resentencing.

In *Banks*, the high court examined under what circumstances an accomplice who lacked an intent to kill could nevertheless qualify "as a major participant" in a felony murder so as to be statutorily eligible for the death penalty. (*Banks*, *supra*, 61 Cal.4th at p. 794.) The *Banks* court set forth factors to consider in resolving this issue. (*Id.* at p. 803.) *Clark* reaffirmed the factors articulated in *Banks*. (*People v. Clark*, *supra*, 63 Cal.4th at p. 611.) In addition, the *Clark* court set forth factors to consider when deciding whether an accomplice to a felony murder acted with reckless indifference to human life. (*Id.* at pp. 618–623.)

The factors from *Clark* and *Banks* are inapplicable here. Appellant was not convicted of felony murder. California does not recognize the crime of "attempted felony murder." (*People v. Bland* (2002) 28 Cal.4th 313, 328 [there is no crime of attempted felony murder if no death occurs during a felony]; *People v. Brito* (1991) 232 Cal.App.3d 316, 321; *People v. Patterson* (1989) 209 Cal.App.3d 610, 614.) Because appellant was convicted of attempted murder, *Clark* and *Banks* do not control in determining whether the petition for resentencing should have been granted in this situation.

Prior to Senate Bill No. 1437, an accomplice could be found guilty of attempted murder under a natural and probable consequences theory of liability. The intent to kill could be imputed to the accomplice from the actual killer or perpetrator. (*People v.*

8.

*Montes* (2021) 71 Cal.App.5th 1001, 1007.) Following Senate Bill No. 1437, however, the natural and probable consequences doctrine has been eliminated.

To be liable for attempted murder, the prosecution must establish that appellant held a specific intent to kill, and he committed a direct but ineffectual act toward accomplishing the intended killing. (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) As an aider and abettor, appellant may be guilty of attempted murder if he aided and encouraged an attempted murder knowing of the direct perpetrator's intent to kill and intending to facilitate the killing. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654, fn. 8.) "In other words, 'the person guilty of attempted murder as an aider and abettor must intend to kill.' [Citation.]" (*Ibid*.)

Here, no evidence demonstrates that appellant intended to kill. He was unarmed when this crime occurred. He did not supply the shotgun which Castrejon used. There was no evidence that appellant and Castrejon agreed in advance that a killing would occur. Nothing shows that appellant knew in advance that Castrejon was likely to fire the gun. Instead, Castrejon was ahead of appellant when Castrejon encountered the store owner. The owner unexpectedly fired and Castrejon returned fire. Appellant fell to the ground and, when he saw Castrejon lower his shotgun, appellant fled to the vehicle. Although appellant agreed to steal property, nothing shows he intended to facilitate a murder.

In denying the petition for resentencing, the trial court was concerned that appellant had known Castrejon was armed when they initiated the attempted robbery of the convenience store. According to the court, this was "clearly a dangerous situation" which created an "unreasonable risk of death or great bodily injury" to others. Likewise, respondent asserts to us that appellant acted with reckless indifference, at least in part, because appellant "knew that a gun would be used" during this attempted robbery. According to respondent, appellant "was a willing participant in a crime with an obvious risk of death" and it was foreseeable the shotgun would be fired.

9.

We reject respondent's position. The "reckless indifference" standard is not applicable here. Instead, the issue for attempted murder is whether appellant held an intent to kill as a direct perpetrator, or he aided and encouraged an attempted murder knowing of the direct perpetrator's intent to kill and intending to facilitate the killing. (*People v. Canizales*, *supra*, 7 Cal.5th at p. 602; *People v. Gonzalez*, *supra*, 54 Cal.4th at p. 654, fn. 8.) Neither appellant's presence at this crime scene nor his knowledge that Castrejon was armed establish appellant's own intent to kill. Malice may not be imputed to appellant based solely on his participation in the crime.[3] (§ 188, subd. (a)(3).)

### B. An intent to kill is not established from the totality of the crime spree.

The trial court stated that, if it viewed the incident in isolation, it might find reasonable doubt. However, the court focused on the totality of the crime spree. According to the court, appellant's actions before and after this shooting circumstantially showed his reckless disregard for life. Respondent takes a similar approach as the trial court did. Respondent urges us to consider the totality of the crime spree when analyzing appellant's mental state. Respondent relies on *People v. Rodriguez* (2021) 66 Cal.App.5th 749 (*Rodriguez*). *Rodriguez* does not assist respondent.

In *Rodriguez*, Rodriguez and his codefendant went on a two-day crime spree. They robbed and attempted to rob numerous victims. They both separately shot different victims. (*Rodriguez*, *supra*, 66 Cal.App.5th at p. 755.) On appeal, Rodriguez claimed he could not be liable for murder when his codefendant had killed a victim during the course of an attempted robbery while he (Rodriguez) was sitting outside the tire shop in a car. (*Id.* at p. 765.) The *Rodriguez* court held that it could not look at this incident in

---

**3** In the context of felony murder, our high court holds that mere participation in an armed robbery is insufficient to establish that a defendant engaged in criminal activities known to carry a grave risk of death. (*Banks*, *supra*, 61 Cal.4th at p. 805.) Likewise, a defendant's awareness that a robbery accomplice is armed, without more, is insufficient to establish a subjective awareness of a grave risk of death or a reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at p. 618; *Banks*, *supra*, 61 Cal.4th at p. 809, fn. 8.)

isolation. Instead, the totality of the crime spree had to be considered. (*Id.* at p. 768.) Mere hours before this murder had occurred, Rodriguez had participated in the robbery and attempted robbery of other victims. Rodriguez had himself shot a third victim during the course of an attempted robbery, but that victim had lived. (*Id.* at p. 769.) Less than one hour before the murder at the tire shop, Rodriguez had robbed a victim at gunpoint, and, when that victim had resisted, Rodriguez had pointed a gun at his head and asked if he wanted to die. (*Ibid.*)

The *Rodriguez* court concluded that Rodriguez "was not just a getaway driver in a single episode. He was a major participant in an obvious conspiracy to commit a series of robberies." (*Rodriguez, supra*, 66 Cal.App.5th at p. 769.) After the murder at the tire shop occurred, Rodriguez drove his codefendant away, and they continued their crime spree. Approximately two hours later, they jointly robbed other victims at a taco truck while they both brandished firearms. (*Id.* at p. 770.) Approximately one hour later, Rodriguez robbed a woman of her necklaces at gunpoint, yanking the chains off by force. Less than four hours after the codefendant had committed his murder, Rodriguez killed another victim by shooting him in the back as the victim held his hands up in surrender and begged not to be killed. (*Ibid.*) The two continued their crime spree the next day. (*Ibid.*) The *Rodriguez* court held that, from the totality of evidence, Rodriguez was a major participant in the murder which his codefendant had committed. (*Ibid.*) The appellate court also concluded that the evidence supported a finding of reckless indifference to human life. (*Id.* at p. 771.)

The *Rodriguez* court explained that, although there was no direct evidence Rodriguez had known his codefendant had a propensity to kill, Rodriguez himself "had just shot someone in the head" during their ongoing conspiracy to commit robberies. (*Rodriguez, supra*, 66 Cal.App.5th at p. 772.) Thus, it could be inferred that Rodriguez "knew his older confederate would be willing to resort to the same levels of violence, especially if met with perceived resistance." (*Ibid.*) Additionally, Rodriguez took no

steps to minimize the risk of violence. (*Ibid.*) Instead, his conduct before and after this murder showed he was "all in for the violence." (*Ibid.*)

Contrary to the defendant in *Rodriguez*, appellant was never armed at any stage during the four-day crime spree. Appellant never shot at anyone. Prior to the attempted murder at the convenience store, Castrejon had not fired the shotgun at anyone. Nothing shows or even reasonably suggests that appellant was on notice Castrejon was intending to fire the shotgun when the attempted robbery occurred at the convenience store. *Rodriguez* is distinguishable from the present matter and it does not establish that substantial evidence supports the trial court's ruling.

We do not condone appellant's actions over the four-day crime spree. However, the totality of his conduct does not establish that he held an intent to kill when Castrejon unexpectedly exchanged gunfire with the convenience store owner. Substantial evidence does not support the trial court's ruling. After the elimination of the natural and probable consequences doctrine, a reasonable trier of fact could not have found appellant guilty beyond a reasonable doubt of attempted murder. Accordingly, the trial court erred in denying the petition for resentencing. We will reverse the trial court's order, and direct the court to enter an order granting the petition and to vacate the conviction for attempted murder.[4]

## II.  Appellant is Entitled to the Retroactive Benefits of Proposition 57 and Senate Bill 1391; He Shall be Transferred to the Jurisdiction of the Juvenile Division.

Appellant contends that his criminal judgment is no longer final and he is entitled to the retroactive benefits of Proposition 57 and Senate Bill 1391.

Proposition 57 was passed in 2016. (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 87.) It required prosecutors to commence all cases involving a minor in juvenile court, but it allowed prosecutors to move to transfer some minors as young as 14 from juvenile

---

[4]  Because we reverse the trial court's order, we need not address appellant's other contention that the court erred by failing to take into consideration appellant's young age.

court to adult criminal court.  (*Ibid.*)  Proposition 57 applies retroactively to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted.  (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304.)

Senate Bill 1391 was enacted in September 2018; it became effective on January 1, 2019.  (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1038.)  Senate Bill 1391 amended Proposition 57 to prohibit minors under the age of 16 from being transferred to adult criminal court.  (*O.G. v. Superior Court*, *supra*, 11 Cal.5th at p. 87.)  Senate Bill 1391 is retroactive to cases where the judgments were not final before the law went into effect.  (*C.S. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 1038.)

We agree with appellant that he is entitled to the retroactive benefits of Proposition 57 and Senate Bill 1391.  Appellant was 15 years old when his crime spree occurred.  The prosecution charged appellant directly in adult court.  Under current law, however, appellant would have remained in the jurisdiction of the juvenile court.

Appellant's criminal judgment became final before these new laws went into effect.  However, the validity of his attempted murder conviction is now before us on direct appeal following the denial of his petition for resentencing.  Appellant's judgment will no longer be final once the trial court grants his petition for resentencing and vacates his attempted murder conviction.  Because it will no longer be final, appellant will be entitled to the retroactive application of Proposition 57 and Senate Bill 1391.  (See *People v. Keel*, *supra*, 84 Cal.App.5th at p. 565 [reaching same conclusion]; see also *People v. Padilla* (2022) 13 Cal.5th 152, 161 [Proposition 57 retroactively applied to juvenile whose sentence was vacated after successful habeas writ].)

On remand, this matter must be transferred to the juvenile court, which shall treat appellant's remaining convictions as juvenile adjudications.  The juvenile court shall impose an appropriate disposition.  (*People v. Keel*, *supra*, 84 Cal.App.5th at p. 565.)  Appellant, however, is not entitled to relitigation of his guilt regarding his remaining convictions.  (See *People v. Padilla*, *supra*, 13 Cal.5th at pp. 169–170 [retroactive benefit

of right to juvenile transfer hearing does not permit relitigation of guilt].)  We reverse and remand.

## **DISPOSITION**

The trial court's order denying the petition for resentencing is reversed.  The court is directed to enter an order granting the petition and the court shall vacate the conviction for attempted murder.  The trial court shall then transfer this matter to the juvenile division of the superior court.  The juvenile court is instructed to treat appellant's remaining convictions as juvenile adjudications and to impose an appropriate disposition.

LEVY, Acting P. J.

WE CONCUR:

PEÑA, J.

SNAUFFER, J.