Filed 9/30/25  P. v. Wilson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DARRYL WILSON,<br><br>Defendant and Appellant. | B327451<br><br>(Los Angeles County<br>Super. Ct. No. TA071802) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge. Affirmed.

Law Office of Winston K. McKesson and Winston K. McKesson for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Darryl Wilson appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] Wilson was convicted of four counts of attempted murder for driving the getaway car during two gang-related drive-by shootings that injured four people. The trial court instructed the jury with a modified version of CALJIC No. 3.02 that effectively removed the natural and probable consequences doctrine from consideration. Direct aiding and abetting remained as the only legally valid theory of liability. We affirm because the record of conviction conclusively establishes that Wilson was not convicted under an invalid theory of liability.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Facts[2]

On September 18, 2003, affiliates of the Tree Top Piru Bloods gang murdered Kevin Jones, also known as K-Loc, a member of the Grape Street Crips gang.

On September 20, 2003, Wilson drove Dallan Louis, Rudy Anderson, and one or two other men in a tan Ford Contour into Tree Top Piru territory on Bullis Road in Compton, California. When they arrived at the 1300 block of Bullis, the right rear passenger opened the car's right rear door and fired shots at

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    We refer to the factual background from the nonpublished opinion in *People v. Wilson* (Jan. 11, 2007, B183372) [nonpub. opn.], which affirmed the judgment of conviction. These facts are "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) We do not rely on these facts. (*Id*. at p. 988.)

2

Dametric Turner and Lamont (Douglas) Baskin, who were outside of an apartment building. The front passenger also fired shots. Baskin ran for cover and Turner went behind a parked car. Turner was shot once in the hip. Baskin was shot three times in the thigh.

Rayvonn Colbert heard shots and saw a tan-colored four-door car approaching him, while he was walking on the 2100 block of Bullis Road, a quarter mile from the first shooting incident. He saw four African American men in the car. The front passenger had his upper body extended out the window while carrying a Tec-9 pistol. When the car was about three feet away, Louis yelled at Colbert and shot at him. Two men in the rear seats also shot at Colbert. A shot hit Colbert's shin as he turned to run away. Colbert later identified Louis as the front passenger.

Sixteen-year-old Denisha Shelton was standing in the gated area of an apartment building on Bullis Road when she heard shots fired. One shot struck her right knee.

Near the intersection of Bullis Road and Carlin Avenue, Wilson lost control of the Ford Contour while speeding at about 70 miles per hour. He sideswiped one car and struck another head on. Four or five men, including Wilson and Louis, got out of the car. Louis had an injured leg and sat on a curb. Wilson and the others fled.

Los Angeles County Sheriff's Deputy Thomas Peter heard 15 to 20 shots while he was driving north on Bullis Road. Soon after, he heard seven additional shots. When Deputy Peter reached the traffic collision site on Bullis Road, he detained Louis and found a Tec-9 pistol on the front passenger floorboard. Another deputy named Alfonso Garcia found Wilson's cellphone

on the driver's side floorboard.  It had an entry programmed for K-Loc.

Wilson fled through the yard of a residence occupied by Kayla Ortiz.  He was limping.  He first told Ortiz that he had been hit by a car.  But then Wilson said he was running from a crash because he was uninsured.  Wilson asked Ortiz to hide him and not call the police.  Sheriff's Deputy Brandon Dean entered Ortiz's yard and took Wilson into custody.

According to Los Angeles Police Department Officer Christian Mrakich, Wilson, Louis, and Anderson were documented Grape Street gang members.  All three had gang-related tattoos.

## II.    Procedure

### A.    *Original trial court proceedings and direct appeal*

On December 17, 2004, a jury convicted Wilson of four counts of attempted murder (§§ 187, subd. (a), 664; counts 1–4) against Rayvonn Colbert, Denisha Shelton, Douglas Baskin, and Dametric Turner, respectively.  The jury found that the attempted murders against Colbert and Shelton were willful, deliberate, and premeditated.  The jury also found the gang allegations (§ 186.22, subd. (b)(1)) true as to each count.  The jury found the firearm use allegations (§ 12022.53, subds. (c), (d), (e)(1)) not true.

For counts 1 and 2, the trial court imposed concurrent prison terms of 15 years to life.  For counts 3 and 4, it imposed concurrent determinate terms of 19 years.

On direct appeal, this division affirmed Wilson's conviction. (*People v. Wilson, supra,* B183372.)

4

### B. *Resentencing petition*

On August 26, 2021, Wilson, through counsel, filed a petition for resentencing under former section 1170.95.[3] On January 25, 2022, the District Attorney responded. On February 15, 2022, Wilson's counsel filed a reply. On March 2, 2022, the superior court issued an order to show cause upon the People as to why relief should not be granted.

On August 29, 2022, the superior court conducted an evidentiary hearing. The court took judicial notice of the trial transcript and jury instructions. The court denied the petition, finding Wilson guilty of attempted murder as a direct aider and abettor.

Wilson filed a notice of appeal.

## DISCUSSION

## I. Changes to murder law

Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the substantive law on accomplice liability for murder by significantly narrowing the felony murder rule and by requiring that a principal in a crime act with malice aforethought. (§§ 189, subd. (e), 188, subd. (a)(3); *People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*).) The latter change requires that malice "not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The change eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine. (*Curiel*, at p. 449; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

---

[3] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) expanded eligibility for resentencing to include convictions for attempted murder under the natural and probable consequences doctrine. (§ 1172.6, subd. (a); *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3.)

Section 1172.6 permits defendants convicted of attempted murder under the natural and probable consequences doctrine (or murder under the felony murder or natural and probable consequences doctrines or any theory in which malice is imputed based on participation in a crime) to petition to vacate the conviction and be resentenced on any remaining counts, if they could not now be convicted because of the changes made effective January 1, 2019. (§ 1172.6, subd. (a); *Lewis, supra*, 11 Cal.5th at pp. 959–960.) If the petitioner makes a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing where the prosecutor and petitioner may offer new or additional evidence.[4] (§ 1172.6, subd. (c); *Lewis*, at p. 960.)

The prima facie inquiry is limited. (*Lewis, supra*, 11 Cal.5th at p. 971.) The superior court takes the petitioner's

---

[4] At the evidentiary hearing, the superior court may consider evidence previously admitted "including . . . , stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) The prosecution has the burden of proving beyond a reasonable doubt the petitioner is guilty of attempted murder under the amended law. (*Ibid*.; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066.) The trial court acts as an independent fact finder to determine whether the prosecution has met its burden (*Hill,* at p. 1066) but its factual determinations are limited to "issues made relevant by the changes to the law effected by [the amendments]." (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787.)

6

factual allegations as true and refrains from factfinding. (*Ibid.*) The record of conviction will necessarily inform the prima facie inquiry, enabling the court to distinguish between potentially meritorious petitions and clearly meritless ones. (*Ibid.*)

The jury instructions and verdicts are part of the record of conviction. They "may provide 'readily ascertainable facts from the record' that refute the petitioner's showing. [Citation.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, overruled to the extent it is inconsistent with *Lewis*, *supra*, 11 Cal.5th 952; *People v. Harden* (2022) 81 Cal.App.5th 45, 56 [affirming summary denial because jury instructions and verdict established ineligibility for relief as a matter of law].) If the record conclusively establishes that the petitioner is ineligible for relief, the superior court may dismiss the petition. (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

Whether the record of conviction shows the petition is ineligible for section 1172.6 relief as a matter of law is a legal question that we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

## II. The felony murder doctrine does not apply to attempted murder

Wilson's primary argument on appeal is he is eligible for relief under section 1172.6 because substantial evidence did not support that he was a "major participant" in the attempted murders and acted with "reckless indifference to human life."[5]

---

[5] To support his argument, Wilson incorrectly evaluates the factors under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, which apply to the acts and mental state of an aider and abettor in the underlying felony for felony murder.

7

He fails to recognize that these are the elements to establish aider and abettor liability under the felony murder doctrine for first-degree murder only. (§ 189, subd. (e).) The felony murder doctrine does not apply to attempted murder. (*People v. Billa* (2003) 31 Cal.4th 1064, 1071, fn. 4; *People v. Brito* (1991) 232 Cal.App.3d 316, 321; *People v. Patterson* (1989) 209 Cal.App.3d 610, 614.)

Not surprisingly, the trial court never instructed Wilson's jury on the felony murder doctrine. During the resentencing proceedings, the superior court also never considered whether Wilson satisfied any condition for eligibility under a felony murder theory provided in section 189, subdivision (e).[6]

We need not decide any challenge to the sufficiency of the evidence supporting the superior court's finding at the evidentiary hearing that Wilson remains guilty of attempted murder under current law. The record of conviction conclusively establishes that Wilson is ineligible for resentencing as a matter of law. Even if a trial court issues an order to show cause and holds an evidentiary hearing in a case where the record of conviction forecloses relief as a matter of law, a reviewing court

---

[6] Section 189, subdivision (e) provides for felony murder liability if the defendant was the actual killer, was not the actual killer but with the intent to kill, aided, abetted, or assisted the actual killer in the commission of first degree murder, or was a major participant in the underlying felony and acted with reckless indifference to human life.

may affirm the denial of the petition based on the petitioner's legal ineligibility.[7]

## III. Attempted murder and the natural and probable consequences doctrine

Attempted murder requires a "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7.) Prior to Senate Bill Nos. 1437 and 775, the natural and probable consequences doctrine provided a theory of aider and abettor liability for attempted murder, even though the defendant lacked a specific intent to kill. Under this doctrine, a defendant may be liable as an aider and abettor not only for an intended or target crime, but also for any unintended or non-target crime that was the natural and probable consequence of that target crime. (*People v. Prettyman* (1996) 14 Cal.4th 248, 254, 261 (*Prettyman*); *People v. Gentile* (2020) 10 Cal.5th 830, 844.) To qualify as the natural and probable consequence of the target offense, the non-target offense must have been reasonably foreseeable. (*Prettyman*, at p. 261.) Unlike direct aiding and abetting, culpability does not require sharing the direct perpetrator's intent. The non-target offense may not have been intended at all. (*Gentile*, at p. 845.)

Section 1172.6 relief for a conviction of attempted murder is only available if it was based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a)(1); *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); *People v. Lovejoy* (2024)

---

[7] The record is not clear as to the superior court's reason for finding a prima facie showing, issuing an order to show cause, and conducting an evidentiary hearing.

101 Cal.App.5th 860, 865.) To properly deny a petition for resentencing a conviction for attempted murder, the record must conclusively demonstrate that the jury did not rely on the natural and probable consequences doctrine. (*Lovejoy*, at p. 865.)

## IV. Modified jury instruction

In its original format, CALJIC No. 3.02 was the pattern instruction for the natural and probable consequences doctrine.[8]

---

[8] The 2000 revision of CALJIC No. 3.02 stated:

"One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime][those crimes], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted. [¶] In order to find the defendant guilty of the crime[s] of _____, [as charge in Count[s] _____,] you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime [or crimes] of _____ [was][were committed]; [¶] 2. That the defendant aided and abetted [that][those] crime[s]; [¶] 3. That a co-principal in that crime committed the crime[s] of _____; and [¶] 4. The crimes[s] of _____ [was][were] a natural and probable consequence of the commission of the crime[s] of _____. [¶] [You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of [charged crime] was a natural and probable consequence of the commission of that target crime.] [¶] [Whether a consequence is 'natural and probable' is an objective test based not on what the defendant actually intended but on what a person of reasonable and ordinary prudence would have expected would be likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural consequence'

10

But the trial court provided the jury with a modified version of CALJIC No. 3.02 that contained nothing about the natural and probable consequences doctrine.[9]

As modified, the instruction read:

"In order to find the defendant guilty of the crimes as charged as an aider [and] abettor, you must be satisfied beyond a reasonable doubt that:

"1. The crime or crimes as charged were committed;

"2. That the defendant aided and abetted that those [*sic*] crimes;

"3. That a co-principal in that crime committed the crimes charged."

The modified instruction did not use the phrase "natural and probable consequence" or any similar terms. It did not discuss aider and abettor liability for any unintended or non-target crime committed by a principal that was the natural and probable consequence of an intended or target crime which the defendant originally aided and abetted. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117; *Prettyman, supra,* 14 Cal.4th 248, 262.) The instruction did not identify any specific target crime, nor distinguish between target and non-target crimes. It did not require proof beyond a reasonable doubt that the attempted murder was the natural and probable consequence of the

---

is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen.]"

[9]     The record does not reveal why CALJIC No. 3.02 was modified. It only indicates that the parties did not object to the jury instructions.

11

commission of any target offense. These omissions effectively removed the natural and probable consequences doctrine from the jury's consideration.

The only theory of liability provided by the instructions was direct aiding and abetting. The trial court read CALJIC Nos. 3.00 and 3.01 on principals to a crime and direct aiding and abetting liability, respectively. CALJIC No. 3.01 explained the requirements of aiding and abetting, including knowledge of the perpetrator's unlawful purpose, intent of committing, encouraging, or facilitating the commission of the crime, and by act or advice, aiding the commission of the crime. The modified version of CALJIC No. 3.02 essentially repeated the distinction between the two types of principals in CALJIC No. 3.00 by stating the defendant aided and abetted those crimes and a co-principal committed the crimes. At most, the modified version of CALJIC No. 3.02, along with these instructions, could only have permitted the jury to convict Wilson of attempted murder under the currently valid theory of direct aiding and abetting.

The prosecutor's theory of the case was consistent with only these instructions. The prosecutor argued that Wilson directly aided and abetted the attempted murders. He had the specific intent to kill each of the attempted murder victims based on his role as the driver in the drive-by shooting and his motive to retaliate for his friend's murder. The argument provided no reference to liability for attempted murder as the natural and probable consequence of aiding and abetting a target crime.

Cases consistently affirm the denial at the prima facie showing stage when "[n]othing in the charges, the instructions, or the balance of the trial permitted the jury to find [the petitioner] guilty on a theory other than direct aiding and abetting." (*People*

12

*v. Cortes* (2022) 75 Cal.App.5th 198, 205–206; *People v. Estrada* (2022) 77 Cal.App.5th 941, 943, 946; *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1034–1035; *Coley*, *supra*, 77 Cal.App.5th at p. 548.)  We see no need to conclude differently.

## DISPOSITION

We affirm the trial court's order denying Wilson's petition for resentencing under section 1172.6.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.

13